Donald **ROSENFELD**,
Plaintiff/Appellant,

v.

Robert A. **BROOKS**, et al.,
Defendants/Respondents.

No. 65793.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 31, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 7, 1995.

Application to Transfer Denied
April 25, 1995.

Paul H. Schramm, Daniel R. Schramm, Schramm & Pines, St. Louis, for Donald Rosenfeld.

William I. Rutherford, Kenneth Aubrey Slavens, T. Michael Ward, Brown & James, P.C., St. Louis, for Robert A. Brooks.

Richard L. Hughes, Mogab & Hughes, P.C., St. Louis, for John C. Hannegan.

Robert T. Haar, Kohn, Shands, Elbert, Gianoulakis & Giljum, David S. Slavkin, Bryan Cave, St. Louis, for Telcom Industries, Inc., First Capitol Cablevision, Inc., Telcom Engineering, Inc., Telcom Cablevision, Inc.

Ervin D. Davis, pro se.

PUDLOWSKI, Judge.

Plaintiff appeals from an order of summary judgment against his various equitable and legal claims related to his status as a principal of an alleged joint venture. The trial court granted summary judgment for plaintiff's failure to demonstrate the existence of this alleged joint venture. We affirm.

The pertinent facts in the light most favorable to plaintiff are as follows. Plaintiff met with Messrs. Hannegan, Ruff, and Davis in April, 1969, and discussed the cable television industry and what each could contribute to a future cable enterprise. Hannegan and Davis stated that they knew little about the mechanics of cable television, but that they "could manage the legal and political aspects of a cable television joint venture." According to plaintiff, they discussed "a partnership in the general sense whereby each of the four would have a 25% interest in the Cable T.V. Business established by them." Ruff, who was deposed before his death, stated that there was an initial meeting regarding an "endeavor," to acquire a "franchise certificate" from the "county or the various cities in that area," and that each would share a one-fourth equal interest. However, Ruff admitted that he could not remember what any individual specifically said at that meeting; he could only recall the general "upshot" of the meeting.

In April and May of 1969 the four met several times and discussed the business more specifically. They agreed that they would seek to establish "franchises" in St. Charles County at St. Peters, O'Fallon, Wentzville, and St. Charles, as well as in unspecified areas of St. Louis County. They also agreed that they would attempt to obtain their first franchise in St. Charles.

Pursuant to the development of the St. Charles franchise, they agreed to form a corporation with each of the four holding 25% of the stock. On April 28, 1969, Hannegan incorporated "St. Charles Community Cablevision, Inc." (SCC), with the four men as officers, directors, and equal shareholders. The City of St. Charles passed an ordinance on September 23, 1969, granting SCC a franchise for a term of 25 years.

In August of 1970 the four men formed three other corporations, St. Peters Cablevision, Inc. (SPC), Wentzville Cablevision, Inc. (WVC), and O'Fallon Cablevision, Inc. (OFC). Hannegan said to plaintiff that this was the best way to hold the franchises.

During the early 1970's the four men enlisted the services of Barnard and Brooks, expert cable consultants. These experts owned several companies including Telcom Engineering, Inc. (Telcom) and TC Industries, Inc. (TC). Over several years they performed numerous services benefitting SCC and SPC. By the spring of 1974 Bar-

nard and Brooks had performed over $13,000 worth of services which had not been paid. Hannegan advised plaintiff that Barnard and Brooks wanted to become "partners" with them, and that they would reduce the amount owed to them by half in exchange for a 50% interest and control. A meeting was held to address the issue on June 15, 1974. Plaintiff was not present at that meeting. The attorney and Secretary of Barnard and Brooks' Telcom and TC companies wrote a proposal to Hannigan at SCC on June 20, 1974. It offered to reduce the amount owed to those companies by several thousand dollars, and to perform future consulting and management services in exchange for 50% of SCC's stock. It was signed:

> Agreed:
> By *John C. Hannegan* [handwritten signature]
> Title *President of St. Charles*
> Community Cablevision, Inc. [handwritten]

The planned cable systems were never actually established by the four men. Yet, ultimately, competing companies were able to erect systems in those areas. Plaintiff brought his original action in the St. Louis County Circuit Court, alleging numerous grounds for relief against the defendants. Defendant Hannegan moved to dismiss the action, alleging that:

> plaintiff has failed to state a claim entitling him to any relief against this defendant, in plaintiff's individual capacity, as any alleged duty owing by this defendant would constitute the rights of the corporation and not the individual plaintiff and any cause of action alleged by the corporation is barred by the two year statute of limitations set forth in § 351.565 and for the further reason that there is a defect of parties in that plaintiff has no authority as an individual trustee to file any action on behalf of the corporation as a single trustee since any and all rights generated by the trustees of a corporation whose charter has been forfeited is in the directors and officers as trustees in their collective capacity.

Honorable James Ruddy sustained this motion on February 6, 1980. Judge Ruddy granted plaintiff leave to amend. Rather than amend, Rosenfeld dismissed the action on April 1, 1980, and on the same day initiated the present lawsuit.

Plaintiff brought the instant action solely as an individual. The most significant difference between the second action and the first was the addition of joint venture allegations, in a patent effort to circumvent Judge Ruddy's ruling. Each and every claim for relief in plaintiff's present action now presupposes the existence of a joint venture:

> Count I: As a result of their participation in the cable television venture ... Defendants ... owed a fiduciary duty to the Principals....

> Count II: As a result of their participation in the cable television venture ... Defendants ... owed a fiduciary duty to the Principals....

> Count III: ... they had an implied duty to deal in good faith with the Principals....

> Count IV: ... Defendants ... intended that Plaintiff rely upon the representation so that he would not take steps to protect his interest in the cable television venture....

> Count V: The above described conduct of Defendants ... constituted a tortious interference with the cable television venture's contracts with the cities ... and among themselves as joint venturers....

> Count VI: ... Defendants ... conspired and contrived together with the design and purpose of injuring and eliminating the cable television venture's business....

> Count VII: As a result of his participation in the cable television venture, Defendant Hannegan owed a fiduciary duty to the Principals....

> Count VIII: ... Defendant Hannegan was negligent and careless in his legal representation of the cable television venture....

Therefore, plaintiff must be able to demonstrate that there was, in fact, a joint venture to be entitled to recover under any of his alleged theories.

On Feb. 2, 1994, the trial court granted summary judgment against plaintiff's present action. Honorable Bernhardt C. Drumm, Jr. found that plaintiff's allegations and conten-

tions of joint venture failed as a matter of law because a) there was insufficient evidence of a joint venture between the original four men, and b) there was insufficient evidence of any joint venture created at the time of the agreement among SCC, TC and Telcom. We agree.

 The party confronted with a motion for summary judgment bears the burden to show with specific facts that there is a genuine issue for trial. *State ex rel. Conway v. Villa,* 847 S.W.2d 881, 886 (Mo.App.E.D. 1993). As stated above, plaintiff must show the existence of a joint venture in order to present a valid issue on any of his alleged theories. A joint venture may be proven in two ways, expressly or impliedly. *Dillard v. Rowland,* 520 S.W.2d 81, 91 (Mo.App.1974). Plaintiff has failed in both regards.

 Plaintiff has not articulated any facts which prove an express joint venture agreement by the parties. An express contract requires the showing of *explicit* promises made by the parties. *Westerhold v. Mullenix Corp.,* 777 S.W.2d 257, 263 (Mo. App.E.D.1989).

 Plaintiff produced no evidence of a written or oral contract made at the original meeting of the four men. In their depositions, neither plaintiff nor Ruff were able to recall any express promises spoken by any individual at the meetings. Plaintiff was asked:

Q Can you tell me anything Mr. Davis said at the meeting?

A I really don't recall what he said.

Q How about Mr. Ruff?

A Oh, well, he introduced me, introduced me to his friends, and then gave—it's possible—I don't—it's hard for me to remember what he said at that meeting.

Similarly, Ruff said "I don't remember what anybody said, other than the upshot was we probably decided to go out and further our mutual interest." Vague recollections of remarks by unidentified persons are not sufficient to support a finding of an express contract for joint venture.

 Similarly, plaintiff has not shown that an express joint venture agreement arose at the time when Barnard and Brooks acquired a 50% interest. The letter of June 20, 1974, unmistakably shows that Barnard and Brooks acquired their interest purely by virtue of the deal among three corporations: Telcom, TC and SCC. No joint venture was mentioned in written letter; and, together with the signatures, it constitutes a wholly integrated agreement. We will not look to parol evidence when a contract is unambiguous on its face. *Craig v. Jo B. Gardner, Inc.,* 586 S.W.2d 316, 324 (Mo. banc 1979).

 Nor can plaintiff show an implied joint venture agreement. Although plaintiff presented several facts consistent with an implied agreement, it is inappropriate for a court to imply a joint venture where, as here, it is evident that there is a different business form involved. "The existence of a different type of express contract is in itself inconsistent with a claimed relationship of a joint venture by implication." *Jeff–Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 16 (Mo.1970). This principle dictates that the unequivocal existence of a definite business form is the most reliable expression of the relationship among the parties. In this case, the unequivocal existence of the corporate form of SCC precludes plaintiff from demonstrating the joint venture by implication.

 Plaintiff, however, asserts that the existence of a joint venture is consistent with the existence of a corporation, and cites *Denny v. Guyton,* 327 Mo. 1030, 40 S.W.2d 562, 569–70 (banc 1931). We acknowledge that *Guyton* demonstrates that it is possible for a corporation to exist as an arm of a joint venture. However, courts will not *imply* such arrangements. The party in *Guyton,* unlike plaintiff in the present case, was able to show an *express* agreement of a joint venture: "Enough of the circumstances and conversation were detailed by this witness to show that he made such a proposition to his four named associates and that they agreed to it." *Id.* 40 S.W.2d at 581. Plaintiff, unlike the party in *Guyton,* has failed to properly show an express agreement for joint venture to rebut the presumption that the parties were operating solely under the express corporate form.

For the aforementioned reasons, we affirm the order of the trial court granting summary judgment against plaintiff. Because these reasons, alone, justify the order for summary judgment on all counts, we need not address plaintiff's other points on appeal.

Judgment affirmed.

SMITH, P.J., and WHITE, J., concur.