**Loren Martin HATCH,**
**Appellant/Cross–**
**Respondent,**

v.

**V.P. FAIR FOUNDATION, INC.**
**Respondent/Cross–**
**Appellant,**

and

**Northstar Entertainment, Inc.,**
**Respondent/Cross–**
**Appellant.**

Nos.  73279, 73280.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 16, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 5, 1999.

Richard C. Witzel, David A. Dimmitt, Witzel, Kearns, Kenney & Dimmitt, Alan G. Kimbrell, St. Louis, for appellant/cross-respondent.

Thomas C. Walsh, Elizabeth C. Carver, St. Louis, for respondents/cross-appellants.

## OPINION

JAMES R. DOWD, Judge.

This is an appeal and a cross-appeal from a judgment entered on a jury verdict in a personal injury lawsuit commenced by Loren Martin Hatch against defendants V.P. Fair Foundation, Inc. ("V.P.Fair") and Northstar Entertainment, Inc. ("Northstar") to recover damages for injuries Hatch suffered when Northstar failed to attach the bungee cord to the crane when he made a bungee jump. The jury awarded Hatch $5,000,000, finding V.P. Fair vicariously liable on a premises liability theory and Northstar liable on a recklessness theory. Hatch appeals from the trial court's grant of V.P. Fair's motion for judgment notwithstanding the verdict on his premises liability claim and from the trial court's entry of summary judgment on two of his other claims against V.P. Fair. He also appeals from the trial court's grant of summary judgment on his negli-

gence claim against Northstar. In their cross-appeal,[1] defendants claim that the trial court erred in submitting Hatch's recklessness claim to the jury and in defining recklessness for the jury. Defendants also contend that the trial court abused its discretion in overruling their motion for a remittitur of the jury's verdict. We reverse the judgment notwithstanding the verdict in favor of V.P. Fair and remand for entry of judgment against V.P. Fair in accordance with the verdict. In all other respects the judgment is affirmed.

## I. Factual Background

V.P. Fair organizes an annual multi-day fair in downtown St. Louis to celebrate the Fourth of July. The fair offers a variety of events and activities, including air shows, musical performances, food stands, and amusement rides. In 1993, V.P. Fair contracted with Northstar for the provision of a bungee jumping[2] attraction. On July 5, 1993, Hatch and a group of his friends arrived at the fair between 10:30 and 10:45 a.m. Although the fair and all of its activities were scheduled to open at 10:00 a.m., Northstar's employees had yet to arrive at the site. Hatch purchased a ticket to bungee jump and waited approximately fifteen minutes until Northstar's employees arrived and set up the attraction. Hatch was then called into a tent area where he was weighed and signed a log book. He also signed a document written by Northstar, entitled "Release and Waiver of Liability and Indemnity Agreement."

Hatch was then prepared for his bungee jump. He was to be the first jumper of the day. A Northstar employee placed a harness around Hatch's waist and ankles, and fastened the bungee cord to the har-

ness. Hatch walked to the bungee cage where he joined Paul Murray, Northstar's jumpmaster, and a reporter and cameraman from a local television station. A crane lifted the bungee cage 170 feet above the ground, and Murray opened the cage door and straightened out the bungee cord inside the cage. Murray then directed Hatch to the front of the cage and told him that he was locked in and safe to jump. Unfortunately, no one had attached the bungee cord to the crane, and when Hatch leaped off the platform, he plunged 170 feet to the ground. Initially, Hatch fell head-first. Although not attached, the bungee cord momentarily snagged on the bungee cage and stretched out. Breaking loose, the cord recoiled and struck Hatch as it passed him. The force of the recoil apparently reversed Hatch's position so that his descent was upright. The bungee cord and tackle, together weighing between seventy-five and eighty pounds, reached the airbag first and partially deflated it prior to his landing. After landing feet-first in the airbag, Hatch was taken to the hospital. As a result of the fall, Hatch sustained serious injuries to his back, legs, and shoulders. A tape depicting the premises, the preparation for the jump, and the jump itself was shown to the jury.

At some point prior to the 1993 fair, Northstar adopted a safety manual. The manual was created by an association of bungee jumping businesses in an effort to provide safety guidelines for operating a bungee jumping attraction. The manual's safety procedures were largely ignored by Northstar's crew. The manual called for a crew of six, Northstar supplied only a crew of five; the manual specified that the controller must be twenty-five years old, Northstar's controller was eighteen years

---

1.  V.P. Fair has joined Northstar's cross-appeal as a "conditional cross-appellant" to assert errors in the denial of its motion for new trial that would become viable if the judgment notwithstanding the verdict in its favor is reversed. *See* Rule 72.01(c)(1).

2.  The bungee jump in this case was designed to allow participants to jump from a substan-

tial height secured by an elastic cord attached to a crane. A participant's fall is arrested when the cord reaches its length, stretches, and recoils, causing the participant to bounce. Following the jump, the participant is slowly lowered to the ground and unhooked.

old; the manual required every piece of equipment to be inspected daily and recorded on a checklist, there was no record of an inspection on July 5, 1993, indicating that Northstar's employees either failed to inspect the equipment, failed to record the inspections, or failed to do both; the manual required a test jump before opening the bungee jump to the public, Northstar failed to conduct a test jump on the day of Hatch's fall.

After his fall, Hatch instituted this lawsuit against Northstar and V.P. Fair. The second amended petition consisted of eight counts and contained several theories of recovery. Count I of the second amended petition ("Careless Disregard—Joint Venture") sought damages from both defendants, jointly and severally, for negligence based on the theory of joint venture. Count II ("Negligence/Careless Disregard—Northstar Entertainment, Inc.") sought damages from Northstar for negligence in failing to take reasonable efforts to ensure the safety of the bungee jumping operation. Count III ("Negligence/Careless Disregard—V.P. Fair Foundation, Inc.") sought damages from V.P. Fair for its negligence in failing to inspect Northstar's bungee jumping operation to ensure that it was being operated in a reasonably safe manner. Count IV ("Premises Liability—Defendant V.P. Fair Foundation, Inc.") sought damages from V.P. Fair on a premises liability theory for negligence in (1) inviting the public onto its premises which were not in a reasonably safe condition for intended use, (2) failing to warn the public of the existence of a dangerous condition, and (3) failing to inspect the premises and to discover the defective conditions. Count V ("Gross Negligence/Conscious Disregard—Joint Venture") sought damages from both defendants, jointly and severally, for gross negligence or recklessness on a joint venture theory. Count VI ("Gross Negligence/Conscious Disregard—Northstar Entertainment, Inc.") sought damages from Northstar based on North-

star's gross negligence or recklessness in failing to inspect the bungee jumping equipment and in failing to attach the bungee cord to the crane or cage assembly prior to Hatch's jump. Count VII ("Gross Negligence/Conscious Disregard—V.P. Fair Foundation, Inc.") sought damages from V.P. Fair based on its gross negligence or recklessness in failing to inspect Northstar's bungee jumping operation. Count VIII ("Premises Liability—Defendant V.P. Fair Foundation, Inc.") sought damages from V.P. Fair based on its gross negligence or recklessness in (1) inviting the public onto its premises when the premises were not in a reasonably safe condition, (2) failing to warn the public of the existence of a dangerous condition on the premises, and (3) failing to inspect the premises and to discover the defective condition.

Prior to trial, defendants filed motions for summary judgment. The court granted summary judgment in favor of defendants on Counts I and V, finding no joint venture because there was no agreement between V.P. Fair and Northstar to share profits and losses from the bungee jumping operation and because V.P. Fair did not exercise sufficient control over the bungee jumping operation. The court also granted summary judgment in favor of Northstar on Count II, finding that the release signed by Hatch barred his negligence claim against Northstar. As to Count IV, the court found that V.P. Fair could be liable under a premises liability theory only if bungee jumping was an inherently dangerous activity. It entered summary judgment in favor of V.P. Fair on Count VII because it did not state a viable claim against V.P. Fair independently of Count IV. It also entered summary judgment on Count VIII.

Hatch proceeded to trial on Counts IV and VI.[3] The questions of whether Northstar acted recklessly and whether bungee jumping constituted an inherently dangerous activity were submitted to the jury.

**3.** It appears that Hatch abandoned Count III    at trial.

On the recklessness claim, the jury returned a verdict in favor of Hatch and against Northstar. The jury also found that bungee jumping was an inherently dangerous activity and returned a verdict in favor of Hatch and against V.P. Fair on the premises liability claim. The jury awarded Hatch $5,000,000 in damages, and the trial court entered a judgment against defendants in that amount. Defendants filed post-trial motions for judgment notwithstanding the verdict, new trial, and remittitur. The trial court granted V.P. Fair's motion for judgment notwithstanding the verdict and overruled the remaining post-trial motions. This appeal followed.

On appeal, Hatch contends that the trial court erred in: (1) granting V.P. Fair's motion for judgment notwithstanding the verdict on the basis that bungee jumping is not an inherently dangerous activity, (2) sustaining V.P. Fair's motion for summary judgment on the ground that defendants were not engaged in a joint venture, (3) sustaining V.P. Fair's motion for summary judgment on the premises liability claim based on retained control because V.P. Fair did not surrender sufficient control of the premises to avoid liability for the dangerous condition to which patrons of the bungee jumping operation were exposed, and (4) sustaining Northstar's motion for summary judgment on his claim for negligence and holding that the release he signed exculpated Northstar from liability for its future negligence. We hold that there was sufficient evidence to support a finding that bungee jumping is an inherently dangerous activity and that the risk was not caused by collateral negligence; therefore, the trial court erred in granting the judgment notwithstanding the verdict in favor of V.P. Fair. Accordingly, we reverse the judgment notwithstanding the verdict in favor of V.P. Fair and remand for entry of judgment in accordance with the verdict. However, we hold that the trial court did not err in sustaining V.P. Fair's motion for summary judgment on the grounds that it was not engaged in a joint venture. Because V.P. Fair is vicariously liable as a landowner under the inherently dangerous activity exception, we do not need to address the question of whether it is also liable based on retained control. We likewise need not reach the merits of the question of whether Hatch's release released Northstar's negligence because, even if Hatch had a claim for negligence against Northstar, he has already been awarded damages for his injuries based on his recklessness claim against Northstar.

In their cross-appeal, defendants argue that the trial court erred in: (1) submitting Hatch's claim of recklessness to the jury because Missouri does not recognize a cause of action for recklessness; and (2) overruling defendants' motion for new trial because the jury instruction defining the term "recklessness" failed to include a standard of care. Defendants also claim that the trial court abused its discretion in overruling their motion for remittitur of the jury's verdict. We find no error in the points raised on cross-appeal.

## II. Hatch's Appeal

*A. Judgment Notwithstanding the Verdict—Premises Liability*

In his first point, Hatch argues that the trial court erred in granting V.P. Fair's motion for judgment notwithstanding the verdict on the basis of its finding that as a matter of law bungee jumping is not an inherently dangerous activity. The parties agree that for the purposes of tort liability, V.P. Fair is considered a landowner of the fairgrounds.

In general, a landowner owes a duty of ordinary and reasonable care to invitees to prevent injury to the invitee. *Hunt v. Jefferson Arms Apartment Co.,* 679 S.W.2d 875, 879 (Mo.App. E.D.1984). A well-recognized exception to this general rule exists when a landowner hires an independent contractor. A landowner is not vicariously liable for injuries to third

parties caused by the negligence of the independent contractor or his employees. *Lawrence v. Bainbridge Apartments,* 957 S.W.2d 400, 403–04 (Mo.App. W.D.1997). Thus, by hiring an independent contractor, the landowner may shift the duty to use reasonable and ordinary care to prevent injury to the independent contractor. *Halmick v. SBC Corporate Servs., Inc.,* 832 S.W.2d 925, 927 (Mo.App. E.D.1992).

■ Nevertheless, there are at least two exceptions under which a non-negligent landowner may be held vicariously liable for the negligence of an independent contractor: the landowner control exception and the inherently dangerous activity exception. *Lawrence,* 957 S.W.2d at 404. As previously stated, in this opinion we reach only the application of the inherently dangerous activity exception.

As a preliminary matter, the parties disagree whether the determination of whether an activity is inherently dangerous is a question of law or fact. Defendants argue that *Zueck v. Oppenheimer Gateway Properties, Inc.,* 809 S.W.2d 384 (Mo. banc 1991), stands for the proposition that the issue of whether an activity is inherently dangerous is entirely one of law. We disagree. By noting that the question is *initially* one of law, *Zueck* simply enunciated the firmly rooted principle that the trial court must initially decide as a question of law whether or not a plaintiff has made a submissible case. *Id.* at 386. The court noted that for the purposes of its opinion in *Zueck* it was assuming that the work in issue was inherently dangerous, thereby removing any issue of unresolved fact. *Id.* The court did not engage in any further discussion of the matter or purport to overrule any appellate decisions to the contrary.

■ Furthermore, at the time *Zueck* was decided, substantial authority indicated that the question of whether a particular activity is "inherently dangerous" is generally a question of fact for the jury. *See Smith v. Inter–County Telephone Co.,* 559 S.W.2d 518, 524 (Mo. banc 1977); *Nance v. Leritz,* 785 S.W.2d 790, 792 (Mo. App. E.D.1990); *Floyd v. Benson,* 753 S.W.2d 945, 948 (Mo.App. S.D.1988); *Donovan v. General Motors,* 762 F.2d 701, 703 (8th Cir.1985). Therefore, we find *Zueck* does not stand for the proposition that the question of whether a specific activity is inherently dangerous is solely a question of law. Developments after the Supreme Court handed down *Zueck* also support this conclusion. After *Zueck,* the Missouri Supreme Court Committee on Jury Instructions adopted MAI 16.08, which leaves for the jury the ultimate question of whether an activity is inherently dangerous. Accordingly, we hold that the determination of whether an activity is inherently dangerous, while initially a question of law, is ultimately a question of fact.

■ Landowner liability under the inherently dangerous activity exception is a species of premises liability. *Matteuzzi v. Columbus Partnership, L.P.,* 866 S.W.2d 128, 130 (Mo. banc 1993). Under this exception, a landowner who hires an independent contractor to perform an inherently dangerous activity has a nondelegable duty to take special precautions to prevent injury from the activity. *Id.* The landowner "remains liable for the torts of the contractor, simply for commissioning the activity. The liability attaches without any need for showing that the employer is in any respect negligent. It is purely vicarious." *Ballinger v. Gascosage Elec. Coop.,* 788 S.W.2d 506, 511 (Mo. banc 1990).

> The theory upon which this liability is based is that a person who engages a contractor to do work of an inherently dangerous character remains subject to an absolute, nondelegable duty to see that it is performed with that degree of care which is appropriate to the circumstances, or in other words, to see that all reasonable precautions shall be taken during its performance, to the end that third persons may be effectually protected against injury.

41 Am.Jur.2d *Independent Contractors* sec. 41 (1968).

■ A landowner who hires an independent contractor to perform an inherently dangerous activity, however, is not vicariously liable for every act of an independent contractor that causes injury to a third party. According to the Restatement (Second) of Torts,[4] the inherently dangerous activity exception applies only where "the harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of the contract." Restatement (Second) of Torts sec. 427 cmt. d (1965). On the other hand, if the contractor's negligence is "collateral," the general rule of landowner non-liability applies. *Nance*, 785 S.W.2d at 793; Restatement (Second) of Torts sec. 426 cmt. a (1965).

■ The Restatement defines collateral negligence as "negligence which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work, as distinguished from negligence which creates only the normal or contemplated risk." Restatement (Second) of Torts sec. 426 cmt. a (1965). Under this rule,

> a landowner is not required to contemplate or anticipate abnormal or unusual kinds of negligence on the part of the contractor, or negligence in the performance of the operative details of the work which ordinarily may be expected to be carried out with proper care, *unless the circumstances under which the work is done give him warning of some special reason to take precautions, or some special risk of harm to others inherent in the work.*

Restatement (Second) of Torts sec. 426 cmt. b (1965).

■ An appellate court will affirm the entry of a judgment notwithstanding the verdict only when all of the evidence and reasonable inferences drawn therefrom are so strongly against the plaintiff's case that there is no room for reasonable minds to differ and the defendant was entitled to judgment as a matter of law. *Thieme v. Tour–Toiseshell, Inc.,* 887 S.W.2d 795, 796 (Mo.App. E.D.1994). Only when the plaintiff has failed to make a submissible case should the trial court grant a motion for judgment notwithstanding the verdict. *Id.* To determine whether a plaintiff, who obtained a jury verdict, has made a submissible case, we view the evidence in a light most favorable to the plaintiff, giving plaintiff the benefit of all reasonable inferences. *Id.*

In its judgment notwithstanding the verdict, the trial court first concluded that bungee jumping was not inherently dangerous as a matter of law because the evidence indicated that bungee jumping could be done safely. In so holding, the trial court relied on *dicta* found in *Reed v. Ocello,* 859 S.W.2d 242 (Mo.App. E.D. 1993), in which this Court stated "if there is a safe way to perform the activity, it is not inherently dangerous, and the general rule of landowner non-liability applies." *Id.* at 245; *see also Lammert v. Lesco Auto Sales,* 936 S.W.2d 846, 850 (Mo.App. E.D.1996) (relying on *Reed* for the same proposition).

In our view the *dicta* in *Reed* and *Lammert* directly contradicts *Ballinger v. Gascosage Electric Cooperative,* 788 S.W.2d 506 (Mo. banc 1990), in which the court stated that "[t]he essence of inherent danger ... is the need for special precaution. It is not sufficient for the defendant to show that the work can be done safely." *Id.* at 509; *see also* W. Keeton, et al., Prosser and Keeton on The Law of Torts 512–15 (5th ed.1984). The holdings in *Reed* and *Lammert* correctly hold that the

---

4. In *Ballinger,* the court stated that the Restatement correctly reflects Missouri law with respect to the inherently dangerous activity exception. 788 S.W.2d at 511. MAI 16.08, which was adopted after the *Ballinger* decision, cites the Restatement as authority.

activity in question in those cases was not inherently dangerous, however, the *dicta* indicating that an activity is not inherently dangerous if it can be performed safely should not be followed. Accordingly, the trial court erred in entering judgment notwithstanding the verdict in favor of V.P. Fair.

To initially determine whether an activity is inherently dangerous, *Zueck*, 809 S.W.2d at 384, the trial judge should begin by ascertaining the nature of the activity and the manner in which the activity is ordinarily performed. If after considering these factors the trial court concludes the activity does not involve some peculiar risk of harm, then the activity is not inherently dangerous as a matter of law. If the trial court does not so find, then the question should be submitted to the jury pursuant to MAI 16.08.

In this case, while there was evidence that the activity could be done safely, there was also evidence, including Northstar's release form itself,[5] which would support a conclusion that by its very nature the activity involves some peculiar risk of physical harm. Thus, the trial court erred in determining as a matter of law that bungee jumping is not inherently dangerous.

Having found sufficient evidence to support a finding that the bungee jump in this case was inherently dangerous, we must next determine if Northstar's failure to attach the bungee cord is an act of collateral negligence. In its judgment notwithstanding the verdict, the trial court found that Northstar's failure to attach the bungee cord was an act of collateral negligence. Collateral negligence would preclude a finding that the V.P. Fair is vicariously liable. We conclude that the trial court misinterpreted the collateral negligence rule.

Collateral negligence occurs when the negligence is unusual or foreign to the normal contemplated risks of performing the activity. Restatement (Second) of Torts sec. 426 cmt. a (1965). A landowner is not immune from liability simply because the independent contractor's negligence contributed to the third party's injury. *Nance*, 785 S.W.2d at 793. Instead, the proper focus for the factfinder is whether the landowner contemplated or should have contemplated the type of negligence committed by the independent contractor. *Id.;* Restatement (Second) of Torts sec. 426 cmt. b (1965). As to what an employer is and is not expected to contemplate, the Restatement provides the following example:

> [A]n employer may hire a contractor to make an excavation, reasonably expecting that the contractor will proceed in the normal and usual manner with bulldozer or with pick and shovel. When the contractor, for his own reasons, decides to use blasting instead, and the blasting is done in a negligent manner, so that it injures the plaintiff, such negligence is "collateral" to the contemplated risk, and the employer is not liable. If, on the other hand, the blasting is provided for or contemplated by the contract, the negligence in the course of the operation is within the risk contemplated, and the employer is responsible for it.

*Id.*

The test is whether or not the independent contractor's acts were or should have been within the contemplation of the landowner. The Restatement provides that a landowner may be required to contemplate abnormal or unusual kinds of negligence if the circumstances under which the activity is performed give the landowner warning of special reasons to take precautions or some special risk of harm to others inherent in the activity.

5. Northstar's release form contained the following language:
The participant is fully aware that bungee-jumping and all associated activities is a calculated risk sport and contains inherent risk and dangers (including serious injury or death) that no amount of care, caution, instruction, or expertise can eliminate.

Restatement (Second) of Torts sec. 426 cmt. b (1965). Here, because of the extreme height involved, V.P. Fair should have been aware of a special risk of injury to bungee jumping participants if Northstar failed to properly attach the bungee cord. V.P. Fair had the opportunity to argue to the jury that Northstar's actions were not and should not have been within its contemplation. The participant's safety in making a bungee jump depends in large part on the security of the bungee cord. The risk that a participant could be injured as a result of any failure of the cord, its attachment, or the persons operating the jump is a peculiar risk that V.P. Fair should have contemplated. Accordingly, Hatch made a submissible case under the inherently dangerous activity exception.

The trial court properly instructed the jury under MAI 16.08 to determine whether bungee jumping was inherently dangerous.[6] We are satisfied that in considering whether the activity of bungee jumping was inherently dangerous, the jury reasonably could have found that unless adequate precautions were taken, bungee jumping necessarily presents a substantial risk of harm. In addition, the jury reasonably could have found that the risk of injury from a fall is a risk that inheres in bungee jumping itself in the absence of adequate precautions and that the risk was not negligently created solely as the result of the improper manner in which Northstar performed the work. Because Hatch made a submissible case under the inherently dangerous activity exception, the trial court erred in entering judgment notwithstanding the verdict.

V.P. Fair argues that the judgment notwithstanding the verdict can be sustained on other grounds set forth in its motion for judgment notwithstanding the verdict, even if not relied on by the trial court. *See Budding v. Garland Floor Co.,* 939 S.W.2d 419, 421 (Mo.App. E.D.1996). It requests that we sustain the judgment notwithstanding the verdict on the ground that the inherently dangerous activity exception permits a landowner to be held vicariously liable only for an independent contractor's negligent acts and not for its reckless acts or on the ground that its release precludes Hatch's premises liability claim.

Neither of these grounds was raised in V.P. Fair's motion for directed verdict. Rule 72.01(a) requires that a motion for a directed verdict state the specific grounds therefore. Rule 72.01(b) provides that when a motion for directed verdict is not granted, "the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." A motion for judgment notwithstanding the verdict is a motion "to have judgment entered in accordance with the motion for a directed verdict." *Id.* For this reason a sufficient motion for a directed verdict is required to preserve the motion for judgment notwithstanding the verdict and for appeal. *Fust v. Francois,* 913 S.W.2d 38, 45 (Mo.App. E.D.1995). V.P. Fair's failure to raise these issues as grounds for its motion for directed verdict precluded it from obtaining a judgment notwithstanding the verdict in its favor on these grounds and further precludes it from obtaining appellate review of the tri-

6. MAI 16.08 defines inherently dangerous activity as
   an activity that necessarily presents a substantial risk of harm unless adequate precautions are taken.
   The Notes on Use accompanying MAI 16.08 authorize the defendant to request the court to further instruct the jury that an inherently dangerous activity
   does not include a risk of harm that is not inherent in or a normal part of the work to be performed and that is negligently created solely as a result of the improper manner in which the work under the contract is performed.
   This additional provision, which defendants requested be given, properly submitted the question of whether or not Northstar's negligence was collateral and, if it was, whether or not it was the sole cause of the risk of harm.

al court's failure to enter judgment notwithstanding the verdict on these grounds. *Id.*

## B. Summary Judgment Issues

In his next three points Hatch asserts the trial court erred in entering summary judgment against him on his claims based on joint venture, premises liability based on retention of control, and Northstar's negligence. For the reasons stated in Part I, we only address the joint venture claim.

### 1. Preservation of Error

Defendants initially challenge our jurisdiction to consider any of the points of error based on the summary judgment because they were not raised in the motion for new trial. They argue that for the same reasons that error in granting a directed verdict must be preserved in the motion for new trial, a summary judgment should be likewise preserved. We disagree. On appeal we treat summary judgments as the equivalent of court-tried cases and do not require that such judgments be preserved for review in motions for new trial. *Title Ins. Corp. of St. Louis v. United States,* 432 S.W.2d 787, 790 (Mo. App.1968). This rule applies whether or not any issues in the case which were not resolved by summary judgment proceeded to trial.

### 2. Joint Venture

Hatch asserts the trial court erred in entering summary judgment against him on his claims that V.P. Fair was jointly liable with Northstar on the grounds of joint venture. We disagree. A joint venture is an "association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge." *Labor Discount Ctr., Inc. v. State Bank & Trust Co. of Wellston,* 526 S.W.2d 407, 424 (Mo.App.1975) (internal quotations omitted). The elements of a joint venture are: (1) an express of implied agreement among the members; (2) a common purpose to be carried out by the members; (3) a community of pecuniary interests in that common purpose; and (4) an equal voice, giving an equal right of control in the direction of the enterprise. *Eads v. Kinstler Agency, Inc.,* 929 S.W.2d 289, 292 (Mo.App. W.D.1996).

No express agreement between V.P. Fair and Northstar to act as joint venturers was in the summary judgment record. Further, no such agreement could be implied because the parties' contract expressly included an addendum that Northstar is an independent contractor and is not authorized to act as an agent or employee of V.P. Fair. The existence of a different type of express contract is in itself inconsistent with a claimed relationship of joint venture by implication. *Martin v. City of Washington,* 848 S.W.2d 487, 495 (Mo. banc 1993); *see also Jeff–Cole Quarries, Inc. v. Bell,* 454 S.W.2d 5, 16 (Mo.1970). A court may not imply a joint venture where it is evident a different business form was involved. *Rosenfeld v. Brooks,* 895 S.W.2d 132, 135 (Mo.App. E.D. 1995).

In addition, the record did not support a finding that the parties had a community of pecuniary interest. The mere fact that both parties have an economic interest in the activity does not make them joint venturers. *Eads,* 929 S.W.2d at 292. The community of pecuniary interest requires that the parties have a right to share in the profits and a duty to share in the losses. *United States Fidelity & Guar. Co. v. Houf,* 695 S.W.2d 924, 928 (Mo.App. E.D.1985); *Labor Discount Ctr.,* 526 S.W.2d at 424–25. Profit is defined as the excess of income over expenditures. *Labor Discount Ctr.,* 526 S.W.2d at 424. The summary judgment record established that V.P. Fair's fee was to come out of Northstar's gross income from the bungee jump operation whether or not Northstar made any profit, and V.P. Fair was not to share in any of Northstar's losses.

Lastly, the record does not support a finding that V.P. Fair had an equal right to control the bungee jump. There must be some active participation in the enterprise and some control over the subject matter thereof or property engaged therein. *Jeff–Cole Quarries,* 454 S.W.2d at 15. The evidence that V.P. Fair chose the site, permitted Northstar to use its logo, took tickets and payment, controlled the crowd, and lined up prospective jumpers does not establish that V.P. Fair had any voice, much less an equal voice, in the details of the operation of the bungee jump. *See Archer v. Outboard Marine Corp.,* 908 S.W.2d 701, 703 (Mo.App. W.D.1995). Further, defendants presented uncontradicted testimony that no one from the V.P. Fair was in control of physical activities of Northstar's employees or the manner in which the bungee jump was conducted.

The trial court did not err in granting summary judgment in V.P. Fair's favor on Counts I and V. This point is denied.

### III. Northstar's and V.P. Fair's Cross–Appeal

*A. Recklessness Claim*

*1. Existence of a Cause of Action for Recklessness*

Defendants contend that Missouri does not recognize a cause of action for recklessness, and therefore, the trial court erred in submitting Hatch's recklessness claim against Northstar to the jury. In support of their argument, defendants rely chiefly upon *Fowler v. Park Corp.,* 673 S.W.2d 749, 755 (Mo. banc 1984), in which the court noted that "there are no legal degrees of negligence." We disagree with defendants' argument.

When the *Fowler* court said that there are no legal degrees of negligence in Missouri, it was referring to the fact that Missouri does not recognize a doctrine, originally developed in bailment law, which recognizes three "degrees" of negligence: slight negligence, which is the failure to use great care; ordinary negligence, which

is the failure to use ordinary care; and gross negligence, which is the failure to use even slight care. *See* Prosser and Keeton sec. 34, at 210; *see also* 57A Am. Jur.2d *Negligence* secs. 240–43 (1989). This theory has been rejected by the courts of most states, including Missouri. *See Fowler,* 673 S.W.2d at 755; *Virginia D. v. Madesco Investment Corp.,* 648 S.W.2d 881, 886 n. 11 (Mo. banc 1983). The prevailing view is that "there are no 'degrees' of care or negligence as a matter of law; there are only different amounts of care, as a matter of fact." Prosser and Keeton sec. 34, at 211.

The fact that Missouri does not recognize legal degrees of negligence has nothing to do with whether Missouri recognizes a cause of action for recklessness. Recklessness looks to the tortfeasor's state of mind. *Id.* Recklessness is an aggravated form of negligence which differs in quality, rather than in degree, from ordinary lack of care. *Id.* It is applied to conduct which is negligent, rather than intentional, but which is so far from a proper state of mind that it is treated in many respects as if it were so intended. *Id.* at 212–13.

Missouri recognizes a cause of action for recklessness which our supreme court has explained and defined as follows:

> Negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe a prescribed standard of care (52 Am.Jur., Sec. 20) while a willful, wanton, reckless injury is another kind of tort, an intentional injury often based upon an act done in utter disregard of the consequences. 52 Am. Jur., Secs. 22, 23; 38 Am.Jur., Secs. 4, 5. Reckless conduct may be negligent in that it is unreasonable but it is and must be something more than unreasonable, "it must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and therefore, negligent." 2 Restatement, Torts, p. 1294. "The actor's (defendant's) con-

duct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him." 2 Restatement, Torts, Secs. 500, 501.

*Nichols v. Bresnahan*, 357 Mo. 1126, 212 S.W.2d 570, 573 (1948).

In this case Hatch proceeded on his recklessness claim after the trial court found that his release precluded his negligence claim but did not release Northstar's recklessness. "[T]here is no question that one may never exonerate oneself from future liability for intentional torts or for gross negligence, or for activities involving the public interest." *Alack v. Vic Tanny Int'l of Missouri, Inc.*, 923 S.W.2d 330, 337 (Mo. banc 1996). This point is denied.

*2. Definition of Recklessness in Jury Instructions*

Defendants next claim that the trial court erroneously defined recklessness in its instruction to the jury in that the instruction failed to include a standard or degree of care by which to measure Northstar's actions. We do not reach the merits of this point because Northstar failed to preserve this issue for review.

In order to preserve claims of instructional error for review, counsel is required to make specific objections to the instruction at trial and again raise the error in the motion for new trial. Rule 70.03 provides:

Counsel shall make specific objections to instructions considered erroneous. No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Defendants did not make a specific objection at trial to the failure to include a standard of care in Instruction No. 6 at trial. Rather, they objected on different grounds. Counsel stated:

First, it's not in MAI. Second, there is no independent cause of action for recklessness for Missouri. Third, the standard here is gross negligence and the recklessness definition tendered by the plaintiff is not the proper definition for gross negligence.

Where an alleged error relating to an instruction differs from the objections made to the trial court, the error may not be reviewed on appeal. *Seidel v. Gordon A. Gundaker Real Estate Co.*, 904 S.W.2d 357, 364 (Mo.App. E.D.1995); *Wilson v. Kaufmann*, 847 S.W.2d 840, 846–47 (Mo. App. E.D.1992).

Northstar argues that the objection was not insufficient because a different, more generalized standard should apply to instructions which are not in MAI and the objection that was given should have alerted the trial judge to the irregularity of the entire submission. We disagree. First, Rule 70.03 is not limited to those instructions which are in MAI. Second, even if one objection can preserve a different one, a contention with which we disagree, none of the specific objections raised was a valid objection and in no way alerted the trial judge to the fact that there might be a different or valid problem with the instruction.

Northstar next requests that if the objection was not preserved, we review for plain error because of the seriousness of the error. We decline to do so. This was a long and complex trial. If the instruction was as seriously erroneous as Northstar contends, counsel should have made that flaw known to the trial court prior to submission to the jury. Rule 70.03 is designed to prevent retrials for instructional error which was not brought to the trial court's attention prior to submission. This point is denied.

## B. Remittitur

In their final point of error, defendants contend that the trial court abused its discretion in refusing to enter a remittitur of the jury's verdict because it exceeds reasonable compensation for Hatch's injuries and damages. Specifically, defendants claim that the damages award greatly exceeds Hatch's economic damages and is out of line with similar cases.

Although the trial court has broad discretion in ordering a remittitur, the assessment of damages is primarily the function of the jury. *King v. Unidynamics Corp.*, 943 S.W.2d 262, 268 (Mo. App. E.D.1997). We will not disturb the trial court's decision whether or not to reduce damages absent an abuse of discretion so grossly excessive that it shocks the conscience and convinces this Court that both the trial judge and the jury have abused their discretion. *Id.* In reviewing whether a verdict is excessive, our review is limited to the evidence supporting the verdict. *Wright v. Fox–Stanley Photo Prods., Inc.*, 639 S.W.2d 407, 410 (Mo.App. E.D.1982).

There is no precise formula for determining whether a verdict is excessive, and each case must be considered on its own facts with the ultimate test being what fairly and reasonably compensates plaintiff for the injuries sustained. *Seabaugh v. Milde Farms, Inc.*, 816 S.W.2d 202, 211 (Mo. banc 1991). In *Magnuson by Mabe v. Kelsey–Hayes Co.*, 844 S.W.2d 448, 458 (Mo.App. W.D.1992), the court listed several factors to assist in the determination of whether an award is excessive. These factors include: (1) present and future loss of income, (2) medical expenses, (3) plaintiff's age, (4) the nature and severity of the injuries, (5) economic factors, (6) awards given in similar cases, and (7) the superior opportunity of the trial court and jury to appraise plaintiff's injuries and other damages. *Id.*

As a result of his fall, Hatch sustained serious injuries to his back, legs, and shoulders. He has undergone six surgeries, including the placement and subsequent removal of spinal hardware devices. Hatch suffers from chronic pain syndrome and depression for which he takes pain medication and antidepressants. He is no longer able to engage in many of the activities he enjoyed prior to the accident. He cannot exercise, participate in sports or actively interact with his four children. Hatch, who was thirty-nine years old at the time of the accident, was terminated by his employer for excessive absences due to his injuries. Prior to his fall, he maintained an exemplary work record and had consistently received outstanding evaluations. He is presently unable to work as an auditor or accountant because of his inability to concentrate due to ongoing pain and physical limitations. An economic expert testified that Hatch's past wage losses were $37,000 and that his future wage losses were $670,000. His medical expenses at the time of trial totaled $150,-000.

Defendants argue that the jury's award is excessive when compared to similar cases. This, however, is not the sole test. *Fowler v. Park Corp.*, 673 S.W.2d 749, 758 n. 15 (Mo. banc 1984); *Bender v. Burlington–Northern R.R. Co.*, 654 S.W.2d 194, 202 (Mo.App. S.D.1983). The trial court was in the best position to evaluate the evidence regarding Hatch's injuries and damages. We do not find that the verdict is so grossly excessive as to shock the conscience or that both the jury and the judge abused their discretion. Point denied.

The judgment is affirmed in part and reversed in part. The case is remanded with directions to reinstate the verdict against V.P. Fair and to enter judgment thereon.

KATHIANNE KNAUP CRANE, P.J., and RHODES RUSSELL, J., concur.