CLIFFORD H. AHRENS, P.J.,
concurring in part and dissenting in part.
I respectfully dissent from the portion of the majority opinion which finds no instructional error. I believe that the trial court’s failure to include in instruction number six the bracketed portion of MAI 16.08 defining collateral negligence was reversible error which requires that this case be remanded for a new trial. I concur with the remainder of the majority opinion.
The issue of whether the risk of injury from a delay in treatment was inherent in the activity of boxing and thus, whether Gateway owed a duty to Maldonado, was clearly in dispute. Gateway requested that the definition of inherently dangerous activity in instruction number six be limited by including the bracketed phrase included in MAI 16.08. Pursuant to the notes on use for 16.08, the phrase should be added if it is supported by the law and *299 the evidence. The requested phrase limits the definition of inherently dangerous activity to exclude “a risk of harm that is not inherent in or a normal part of the work to be performed and that is negligently created solely as a result of the improper manner in which the work under the contract is performed.” (emphasis added).
If the negligence of the independent contractor is “collateral,” the general rule exempting a landowner from liability for injuries to third parties caused by the negligence of an independent contractor applies. Hatch v. V.P. Fair Foundation, Inc., 990 S.W.2d 126, 134 (Mo.App. E.D.1999). This court in Hatch acknowledged that when requested by the defendant, the bracketed addition to MAI 16.08 defining collateral negligence was properly added to the definition of inherently dangerous activity. Where a risk of harm is not inherent in the activity, no duty arises. A landowner will not be considered liable for negligence that is collateral to the risks created by the activity. Prosser and Kee-ton, The Law of Torts, sec. 71 (5th ed.1984). Where the “performance of the work contracted for in the normal manner contemplated by the contract would involve no expectation of such a risk of harm to the plaintiff, and it is the abnormal departure from usual or contemplated methods by the servants of the contractor which has created the danger,” collateral negligence has occurred. Id.
“In determining whether the evidence was sufficient to support a jury instruction, the evidence is viewed in the light most favorable to the offering party, and we give the offering party the benefit of all favorable inferences.” Shady Valley Park & Pool, Inc. v. Fred Weber, Inc., 913 S.W.2d 28 (Mo.App.1995).
There was evidence at tidal that the risk created was not one inherent in boxing. David Schreiber, M.D., Maldonado’s neurology expert, testified that Maldonado’s permanent brain damage did not result simply from the knockout punch, but rather, the injury was caused by bleeding, pressure and lack of oxygen which occurred over a period of time after the match. Marvin Elam, the referee for the match and a former boxer himself, testified that a risk of injury “goes with the sport.” However, he did not testify that any risk of injury resulting from the failure to have an ambulance on-site or the appropriate medical monitoring was inherent in the sport. Tim Leuckenhoff, the chief investigator for the central investigative unit of the division of professional registration and administrator for the Missouri office of athletics, also testified. He stated that he has witnessed approximately 12,000 fights, and of those roughly 600 to 700 ended in a knockout. However, of the 600 to 700 knockouts only four required additional care or transportation in an ambulance. Maldonado himself testified that he understood a risk of injury, and even brain damage existed in boxing; however, he did not know that the failure to provide appropriate assistance to fighters could cause death. He also testified that he was not aware that boxers could suffer brain damage as he did. He believed boxing was dangerous only to a certain point.
Moreover, the trial court, in its order denying the post-trial motions of the parties, noted that Maldonado’s claim was not based on a risk inherent in boxing, but rather one which was created by negligence in not having medical monitoring or an ambulance at the match. Maldonado’s case was based upon the assertion that the actual knockout punch was not what caused his injury, but rather the delay in medical treatment and failure to monitor Maldonado after the fight caused the brain damage. Throughout the trial, Maldonado presented evidence that the injury was caused by negligence occurring after the *300 boxing match, not by any injury during the fight itself. This evidence and the reasonable inferences therefrom support the addition of the first portion of the bracketed phrase.
There was also evidence that the risk of injury from a delay in treatment was negligently created by Hartmann Productions’ improper departure from the contemplated method of performing the contract with the hotel, which was to have an ambulance on stand-by at the hotel. As noted earlier, where the “performance of the work contracted for in the normal manner contemplated by the contract would involve no expectation of such a risk of harm to the plaintiff, and it is the abnormal departure from usual or contemplated methods by the servants of the contractor which has created the danger,” collateral negligence has occurred. Prosser and Keeton, sec. 71.
The contract provisions required that Hartmann Productions have an ambulance on stand-by at the hotel the night of the match, and Hartmann Productions failed to do so. In the present case, it is a reasonable inference from the evidence that had the work contracted for been performed in the manner contemplated by the contract, the risk of harm resulting from a delay in medical treatment would not be expected. Hartmann Productions’s failure to secure an ambulance for the event was a departure from the contemplated method of performing the work under the contract. As a result of the improper manner in which the contract was performed, an additional risk was created. That very risk is addressed in the second portion of the bracketed addition to MAI 16.08, which states that the definition of an inherently dangerous activity does not include a risk of harm “... that is negligently created solely as a result of the improper manner in which the work under the contract is performed.”
The majority cites Ballinger v. Gascosage Elec. Co-op., 788 S.W.2d 506 (Mo. banc 1990) in support of its opinion that the issue of adequate precautions was within the contemplated risk, and arose from the very nature of the activity. Ballinger is distinguishable. In Ballinger, the plaintiff was injured by electrical shock while stringing new electrical conductors. The defendant in Ballinger requested that additional language be included in the instruction defining inherently dangerous. The language advised the jury that, “[a]n activity is not inherently dangerous where the risk involved does not arise from the very nature of the activity itself but is a risk which could have been prevented by routine precautions of a kind which a careful contractor would be expected to take.” The Missouri Supreme Court determined that the exclusion of this phrase from the instruction was proper because the danger arose from the “very nature of the activity.” Id. at 511-12.[1] In Ballinger, the court found that there was no question that the electrical shock was a danger or risk arising from the very act of working as an electrical construction worker, and therefore the phrase was properly excluded. Here, Maldonado has repeatedly contended, and there was evidence which showed, that his injuries were not caused by the actual activity of boxing itself, but rather from a delay in treatment of his injury. Maldonado presented evidence that the injury was not caused in the performance of the activity itself, as was the *301 injury in Ballinger, Therefore, the Bal-linger reasoning is inapplicable here.
The majority also relies on the example set forth in comment a to section 426 of the Restatement (Second) of Torts that where “blasting is provided for or contemplated by the contract, the negligence in the course of the operation is within the risk contemplated, and the employer is responsible for it.” In that example, blasting was contemplated in the contract, and the negligence occurred in the use of the blasting. In the present case, an ambulance was contemplated in the contract, but the promoter chose instead to use no ambulance. The situation here is analogous instead to the other part of the Restatement example, which states:
Thus an employer may hire a contractor to make an excavation, reasonably expecting that the contractor will proceed in the normal and usual manner with bulldozer or with pick and shovel. When the contractor, for his own reasons, decides to use blasting instead, and the blasting is done in a negligent manner, so that it injures the plaintiff, such negligence is “collateral” to the contemplated risk, and the employer is not hable.
Here, as in the Restatement example, there was evidence that the promoter’s failure to use an ambulance as contemplated, and instead to use no ambulance, was “collateral” to the contemplated risk.[2] As a result, the trial court erroneously failed to include the definition of collateral negligence set out in the bracketed portion of MAI 16.08.
The evidence and the reasonable inferences from the evidence viewed in the light most favorable to Gateway was sufficient to support the addition of the bracketed phase of MAI 16.08 as requested by Gateway. Gateway was limited by the omission of the bracketed portion of the instruction because the focus was shifted from the disputed issue of whether a duty existed, to the issue of breach of duty and whether Gateway took adequate precautions. In only advising the jury of the initial portion of the definition, the trial court assumed the existence of a duty and misdirected the jury on the law. Gateway was denied the opportunity to argue that under the instructions of the court, no duty was owed because the risk of delayed medical treatment was not inherent in boxing. Rather, Gateway was limited to arguing only that adequate precautions, by way of compliance with regulations, were taken. The failure of the trial court to submit this instruction with the requested phrase misstated the law, limited the jury in its determination, and Gateway in its arguments, and therefore, materially affected the merits of the action. For these reasons, I believe that the trial court erred in failing to include the requested portion of the definition of inherently dangerous activity in instruction number six.
Because of the instructional error which materially affected the merits of the action, I would reverse and remand the case for a new trial.

. The language defendant requested be added to the definition of inherently dangerous by the defendant in Ballinger was not identical to the portion sanctioned by MAI 16.08 and at issue here. However, the sentiment behind the words is similar. Both phrases advise the jury that risks or danger which are not "inherent in or a normal part of” or included in the “very nature of” the activity are not considered inherently dangerous.

. I disagree with the majority’s conclusion that the failure to have an ambulance on stand-by was not collateral negligence as a matter of law.