WILLIAM H. CRANDALL, JR., Judge.
Gateway Hotel Holdings, L.L.C. (“Gateway”) appeals the judgment on a jury verdict in favor of Fernando Maldonado (“Maldonado”) on his negligence claim for bodily injuries suffered in a boxing match. The jury awarded Maldonado $13.7 million in compensatory damages. We affirm.
In December 1998, an agreement was entered into between Doug Hartmann Productions, L.L.C. (“Hartmann Productions”) and the Regal Riverfront Hotel (“hotel”) to schedule a boxing event at the hotel. Gateway owns the hotel. The contract outlined the area to be used for the event, and discussed the catering and beverage responsibilities of the hotel. Pursuant to the contract, Gateway received a non-refundable deposit and payment for room rentals and food and beverage. The contract also contained a provision stating that a five million dollar indemnity insurance policy was to be provided, and Hart-mann Productions was to provide a doctor at ringside for the match and an ambulance on stand-by at the hotel the night of the event. The boxing match took place on January 29, 1999. Maldonado was a professional boxer who participated in the match. The fight ended when Maldonado was knocked out. He was revived and left the ring and walked to his dressing room. Maldonado later lost consciousness in his dressing room. There was no ambulance on site. An ambulance was called and Maldonado was taken to a hospital. He suffered severe brain damage as a result of his injury.
Maldonado filed a petition for damages against several defendants, including Gateway. He claimed that Gateway and Hart-mann Productions owed him a duty to provide an ambulance on the premises during the boxing match and to monitor his condition after the fight. He alleged that the failure to have an ambulance at the venue delayed his treatment and caused his brain damage. Prior to trial, Maldonado dismissed all defendants except Gateway, the hotel, and Richfield Hotel Management, Inc., a joint owner of the hotel. The case was tried and the jury returned a verdict in favor of Maldonado of $13.7 million in compensatory damages. Although the issue of punitive damages had not been submitted, the jury also added an award of punitive damages of $27.4 million to the verdict form. The trial court struck the punitive damages and entered judgment in the amount of the compensatory damages only. Gateway filed a motion for judgment notwithstanding the verdict, and an alternative motion for new trial and motion for remittitur, all of which were denied by the court. The present appeal followed.
Gateway raises seven points on appeal. In the first point, Gateway raises arguments relating to the inherently dangerous *293 activity doctrine. First, Gateway claims that the trial court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict (“JNOV”) because Maldonado did not prove that Gateway was hable under the inherently dangerous activity doctrine.[1] Specifically, Gateway claims that Maldonado did not prove that Hartmann Productions was an independent contractor hired by Gateway to perform an inherently dangerous activity.[2] Additionally, Gateway asserts that Maldonado assumed the risks inherent in boxing and he could not recover for risks not inherent in the activity.[3]
“Our review of the denial of a motion for directed verdict and a motion for JNOV is essentially the same.” Crawford v. Shop ‘N Save Warehouse Foods, Inc., 91 S.W.3d 646, 650 (Mo.App. E.D.2002). If the plaintiff fails to make a submissible case, a directed verdict or JNOV will be appropriate. Id. We view the evidence in a light most favorable to the jury’s verdict, and we grant the plaintiff all reasonable inferences therefrom. Id. We disregard any evidence or inferences to the contrary. Id. We will reverse a jury verdict only where there is a complete absence of probative facts to support the jury’s decision. Id.
The term “inherently dangerous activity” means an activity that necessarily presents a substantial risk of harm unless adequate precautions are taken. MAI 16.08. It is a theory of premises liability under which a landowner that hires an independent contractor to perform an inherently dangerous activity has a “nondel-egable duty to take special precautions to prevent injury from the activity.” Hatch v. V.P. Fair Foundation, Inc., 990 S.W.2d 126, 134 (Mo.App. E.D.1999). Liability is imposed upon the landowner without any requirement that the landowner be proven negligent in any respect. Id. This exception applies “only where ‘the harm results from the negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of the contract.’ ” Id. at 135 (quoting Restatement (Second) of Torts sec. 427 cmt. d (1965)). However, if the negligence of the independent contractor is “collateral,” the general rule exempting a landowner from liability for injuries to third parties caused by the negligence of an independent contractor applies. Id.
Gateway initially argues that Maldonado failed to prove that Hartmann Productions was an independent contractor hired by Gateway. Gateway claims that because Hartmann Productions initiated the relationship, and Gateway only rented space to stage the boxing match, there was no independent contractor relationship between the parties, which would subject Gateway to liability under the inherently dangerous activity doctrine. According to Gateway, it did not request the services of Hart-mann Productions for the event, and any services were not performed on behalf of or for the benefit of Gateway; therefore, Hartmann Productions could not be considered to be its independent contractor. We disagree.
Missouri courts have yet to define the term independent contractor under the *294 inherently dangerous activity doctrine. Gateway cites Hougland v. Pulitzer Pub. Co., Inc., 989 S.W.2d 31, 38 (Mo.App. E.D.1997), for the general definition of independent contractor. In Hougland, the court stated that, “[a]n independent contractor is one who contracts with another to do something for him but is neither controlled by the other nor subject to the other’s control with respect to his physical conduct in the performance of the undertaking.” Id. (quoting Tom Lange Co. v. Cleaning by House Beautiful, 793 S.W.2d 869, 871 (Mo.App.1990)). However, we do not believe such a broad definition of the term is appropriate here. Additionally, we note that the test of control in the independent contractor relationship has been “overemphasized in judicial reasoning.” 5 Harper and James, The Law of Torts, sec. 26.11 (2nd ed.1986). The control justification is often insufficient, and the motive behind vicarious liability is based upon the principle that “an enterprise (and its beneficiaries) should pay for the losses caused by the risks that it creates (even without its fault).” Id.
In the present case, we are faced with a unique relationship, and it must be evaluated on its particular circumstances. Trinity Lutheran Church v. Lipps, 68 S.W.3d 552, 558 (Mo.App. E.D.2001). In evaluating the relationship between a hotel, which is providing a venue for an inherently dangerous activity and the promoter who is coordinating such an event, as in the present case, we consider several factors. The primary consideration is the benefit to the hotel from the relationship. Hartmann Productions contracted with the hotel to stage a boxing match at the hotel. Although there was evidence that Hart-mann Productions initially approached the hotel about the event, there was also evidence that Hartmann Productions contracted with the hotel to promote the event to the benefit of the hotel. Carrie Pashia, the convention services manager for the hotel, believed the match would be a profitable endeavor for the hotel. The hotel received profits from room rentals, food and beverage sales. Additionally, the hotel was to receive compensation regardless of whether the event actually took place. The event was advertised as “Ringside at the Regal,” which provided significant exposure for the hotel on national television. Pashia stated that the event would help people become acquainted with the hotel and bring them into the hotel. Thus, the hotel had a dual interest. Not only was the hotel to benefit from the rental income and food and beverage sales, but also, the hotel would benefit from future business generated by the exposure and promotion it would receive from hosting the event.
We next consider Gateway’s ability to minimize its exposure to potential risks from the activity performed at the hotel. Pursuant to the contract, Hartmann Productions was required to provide a five million dollar indemnity insurance policy. Hartmann Productions was also to provide a doctor at ringside for the match and an ambulance on stand-by the night of the event. The hotel provided security for the event, and agreed, pursuant to the contract, to “coordinate all aspects” of the event.
Although Gateway did not solicit Hartmann Productions’ business, ultimately the activity performed by Hartmann Productions benefited the hotel, which is the primary consideration in determining whether sufficient evidence existed of an independent contractor relationship. The hotel was to receive the benefits of the work of Hartmann Productions, not only through profits, but also through national exposure. Additionally, the hotel retained possession of the premises while the event was occurring, and the hotel was in a position to insure against or minimize potential risks of the event by allowing only *295 responsible, experienced promoters to stage matches at the location, by including an indemnification requirement in the contract, and by including the provision requiring Hartmann Productions to secure a ringside physician and an ambulance for the event. Based on the factors discussed above and the particular circumstances regarding the relationship between Hart-mann Productions and Gateway, we find that there was sufficient evidence that Hartmann Productions was the independent contractor of Gateway under the inherently dangerous activity doctrine.
Gateway also claims that Maldonado failed to prove that Gateway was liable under the inherently dangerous activity doctrine because Maldonado assumed any risks inherent in boxing, and he was not entitled to recover for risks not inherent in the activity.
Gateway correctly notes that a person who participates in sports “assumes the risks” inherent in that sport. Sheppard by Wilson v. Midway R-1 School Dist., 904 S.W.2d 257, 263 (Mo.App. W.D.1995). Where parties voluntarily enter a relationship, as they did here, where the plaintiff will assume certain well-known risks, the defendant has no duty to protect the plaintiff from those risks. Id. at 261. However, assumed risks in sporting events do not include those created by a defendant’s neghgence. Id. at 262-63. Maldonado acknowledges that he may have assumed the “primary risk” of being injured by a punch during the boxing match; however, he claims that he did not assume the risk of being injured because of the failure to provide medical monitoring or an ambulance on site. Gateway claims that Maldonado failed to make a submissible case because this risk of injury is not one inherent in boxing, but rather is a risk created solely by alleged neghgence for which Gateway should not be hable. We disagree.
As noted above, under the inherently dangerous activity exception to landowner liability, a landowner hiring an independent contractor to perform an inherently dangerous activity has a “nondelegable duty to take special precautions to prevent injury from the activity.” Hatch, 990 S.W.2d at 134. However, the landowner will not be considered hable if the negh-gence of the independent contractor is “collateral.” Id. at 135.
Collateral neghgence has been defined as “neghgence, which is unusual or abnormal, or foreign to the normal or contemplated risks of doing the work....” Id. (quoting Restatement (Second) of Torts sec. 426 cmt. a (1965)). Pursuant to the Restatement (Second) of Torts, it is not necessary for a landowner to contemplate these unusual or abnormal types of negh-gence by the contractor, or neghgence which may occur in the ordinary operative details of the work being carried out which may be expected to be assumed with proper care. However, it is necessary for the landowner to contemplate this neghgence when “the circumstances under which the work is done give him warning of some special reason to take precautions, or some special risk of harm to others inherent in the work.” Restatement (Second) of Torts sec. 426 cmt. b (1965).
Here, we find that the failure of Hartmann Productions to have medical monitoring and an ambulance present at the hotel for the boxing match was not collateral negligence.[4] Rather, this was *296 “negligence of the contractor in failing to take precautions against the danger involved in the work itself, which the employer should contemplate at the time of the contract.” Hatch, 990 S.W.2d at 135 (quoting Restatement (Second) of Torts sec. 427 cmt. d (1965)). Boxing is an activity that is by its very nature, violent and potential injury is an obvious risk. Because injury is clearly a potential risk of the sport, and the sport is of a violent nature itself, this would provide sufficient warning to a landowner of the potential risk of harm or special reason to take certain medical precautions to prevent further injury from a delay in treatment. The negligent failure to have medical monitoring or an ambulance on stand-by is not the type of negligence which would be foreign to the contemplated risk of being injured or knocked unconscious during a boxing match.
Moreover, having medical monitoring and an ambulance on stand-by was provided for or contemplated by the contract between Hartmann Productions and the hotel. Comment a of section 426 of the Restatement (Second) of Torts sets forth the following example:
Thus an employer may hire a contractor to make an excavation, reasonably expecting that the contractor will proceed in the normal and usual manner with bulldozer or with pick and shovel. When the contractor, for his own reasons, decides to use blasting instead, and the blasting is done in a negligent manner, so that it injures the plaintiff, such negligence is “collateral” to the contemplated risk, and the employer is not liable. If, on the other hand, the blasting is provided for or contemplated by the contract, the negligence in the course of the operation is within the risk contemplated, and the employer is responsible for it.
(emphasis added). A specific provision in the contract between the hotel and Hart-mann Productions required the promoter to provide a physician at ringside and to have an ambulance on stand-by at the hotel the night of the boxing match. Furthermore, although adequate medical monitoring was not specifically set out in the contract, the contract language regarding the ambulance and a doctor at ringside demonstrates medical monitoring was contemplated. Hartmann Productions’ failure to provide an ambulance on stand-by or provide medical monitoring was within the risk contemplated and therefore was not collateral negligence.
Finally, there was extensive evidence adduced by Gateway that it had, in fact, taken “adequate precautions” as that term is used in defining an inherently dangerous activity. The issue of adequate precautions, however, was well within the contemplated risk. See e.g. Ballinger v. Gascosage Elec. Co-op., 788 S.W.2d 506 (Mo. banc 1990). The risks inherent in boxing are inextricably connected with the question of adequate precautions. The danger arises from “the very nature of the activity.” Id. at 511-12. Thus the negligence issue submitted to the jury was not collateral negligence but rather direct negligence relating to the activity. The trial court did not err in denying Gateway’s motions for directed verdict or JNOV. Gateway’s first point is denied.
We next consider Gateway’s third point. Gateway argues that the trial court erred in submitting instruction number six, which is found at MAI 16.08. MAI 16.08 reads in its entirety:
The term “inherently dangerous activity” as used in this [these] instructions means an activity that necessarily presents a substantial risk of harm unless adequate precautions are taken. [, but does not include a risk of harm that is *297 not inherent in or a normal part of the work to be performed and that is negligently created solely as a result of the improper manner in which the work under the contract is performed.]
The instruction as given omitted the bracketed portion of the instruction. Gateway claims because the instruction omitted the bracketed portion of MAI 16.08 it incorrectly defined inherently dangerous activity.[5]
The Notes on Use for MAI 16.08 state in part:
2. This bracketed phrase may have some application in some situations. If the law and the evidence support the addition of this bracketed phrase, it should be added to the definition at the request of the defendant. See: Balling-er v. Gascosage Elec. Co-op., 788 S.W.2d 506, 511 (Mo. banc 1990); and Restatement (Second) of Torts, [sec.] 426.
The bracketed portion of MAI 16.08 should only be given when requested by defendant and when collateral negligence is an issue in the case. It is a definition of collateral negligence. See Hatch, 990 S.W.2d at 135. As stated supra, the issue was not collateral negligence, but whether there was any direct negligence. The trial court correctly refused to submit the issue of collateral negligence to the jury. Gateway’s third point is denied.
We next consider Gateway’s seventh point in which Gateway claims that the award of $18.7 million for compensatory damages is excessive. Gateway contends that the trial court erred in denying its motion for new trial because the excessiveness of the verdict and the trial court’s errors in permitting improper argument and erroneously admitting evidence resulted in a verdict that was the result of the jury’s passion, prejudice and bias.
A trial judge may find passion and prejudice from an excessive verdict. Smith v. Wal-Mart Stores, Inc., 967 S.W.2d 198, 208 (Mo.App. E.D.1998) (citation omitted). To be entitled to a new trial based on excessiveness of the verdict, there must be a showing of trial court error. Id. If the verdict is excessive because of the jury’s passion and prejudice, then the judgment is severely prejudiced and can only be addressed through a new trial. Id. The trial court has great discretion in approving a verdict or setting it aside as excessive, and the court’s decision will not be disturbed unless there has been an abuse of discretion by the trial judge or the jury. Id. To show passion and prejudice by the jury, the complaining party cannot direct the appellate court to the size of the verdict alone but rather must show some other error was committed during trial. Id.; Barnett v. La Societe Anonyme Turbomeca France, 963 S.W.2d 639, 657 (Mo.App. W.D.1997). The appellant must first show that the verdict, viewed in the light most favorable to the prevailing party, was glaringly unwarranted. Id. “ ‘Second, appellant must show trial error or misconduct by the prevailing party that was responsible for producing the passion or prejudice.’ ” Id.
The assessment of damages is primarily within the province of the jury. Fust v. Francois 913 S.W.2d 38, 49 (Mo.App. E.D.1995). There is no exact formula to determine whether a verdict for compensatory damages is excessive and each case must be decided on its merits. Barnett, 963 S.W.2d at 657. In determining whether a compensatory damage award is excessive, the court should consider the evidence in the case and the verdict in light of several factors: (1) loss of income, *298 present and future; (2) medical expenses; (3) the plaintiffs age; (4) the nature and extent of the plaintiffs injuries; (5) economic factors; (6) awards given and approved in comparable cases; and (7) the superior opportunity for the jury and trial court to appraise the plaintiffs injuries and other damages. Id.
Here, the jury heard evidence that Maldonado, a young athlete, age 23 at the time of match, who was sound physically and mentally, was severely and permanently injured. After examining Maldonado, Gateway’s own expert found that he had poor speech, trouble with three part commands, poor judgment, loss of vision on the left side, weakness of his right lower face, difficulty moving his tongue, involuntary movement on his left side, loss of feeling on his left side, unstable deficits on his entire left side, loss of motor control, loss of sensory discrimination, and difficulty with abstract thinking, perception, regulation of behavior and concentration. The jury viewed Maldonado’s video deposition and heard testimony from Maldonado’s mother regarding his condition. In denying Gateway’s request for remittitur, the experienced trial judge found “that in light of the nature of plaintiffs injuries, the jury’s verdict is not against the weight of the evidence.” Based upon our review of the record, we defer to the superior opportunity for the jury and trial court to appraise Maldonado’s injuries and other damages. Hatch, 990 S.W.2d at 141. Accordingly, Gateway’s seventh point is denied.
We have reviewed Gateway’s remaining points. In the second point, Gateway argues that the trial court erred in denying Gateway’s request for a withdrawal instruction on punitive damages and in overruling certain objections by Gateway during closing argument. Gateway argues in the fourth point that the trial court erred in submitting the verdict director. In the fifth point, Gateway argues that the trial court erred in denying its request for a withdrawal instruction and in its evidentia-ry rulings on the issue of a case involving Gateway and a kickboxer’s claim of negligence for failing to have an ambulance on-site during a match. Gateway argues in the sixth point that the trial court erred in its evidentiary rulings regarding unadopt-ed changes to Missouri regulations governing boxing matches. We find that a written opinion for these points would have no precedential value. No error of law appears. Those points are denied. Rule 84.16(b).
The judgment of the trial court is affirmed.
CLIFFORD H. AHRENS, Presiding Judge: concurs in part and dissents in part in separate dissenting opinion.
Lawrence E. Mooney, Judge: concurs.

. The nature of the activity of boxing as inherently dangerous is not at issue in the present appeal.

. Gateway did not assert either at trial or on appeal, and we do not decide, whether Maldonado’s relationship with either Hartmann Productions or the hotel affects his right to recover under the inherently dangerous activity doctrine.

.In the first point, Gateway also challenges instruction 6 discussed infra and instruction 7, the verdict director.

. A portion of the verdict director instructed the jury that its verdict must be for Maldonado if Hartmann Productions’ "either: failed to provide an ambulance on standby during the plaintiff’s boxing match, or Failed to provide medical personnel in plaintiff’s locker room to monitor his condition....”

. Maldonado claims that Gateway failed to preserve its objection to instruction six and therefore, this issue has not been preserved for appeal. We have reviewed the record and find that it is preserved and therefore consider the issue on the merits.