**GATEWAY HOTEL HOLDINGS, INC., et al., Plaintiffs/Appellants,**

v.

**LEXINGTON INSURANCE CO., Defendant/Respondent.**

No. ED 90345.

Missouri Court of Appeals, Eastern District, Division Two.

Sept. 16, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 3, 2008.

Application for Transfer Denied Feb. 24, 2009.

See also 154 S.W.3d 303.

Debbie S. Champion, Victor H. Essen, II, Rynearson, Suess, Schnurbusch & Champion, L.L.C., St. Louis, MO, for appellant.

Matthew J. Fink (pro hac vice), Barbara I. Michaelides (pro hac vice), Chip G. Schoneberger (pro hac vice), Joseph P. Lang (pro hac vice), Bates & Carey, LLP, Chicago, IL, and R. Prescott Sifton, Husch Blackwell Sanders, LLP, St. Louis, MO, for respondent.

KURT S. ODENWALD, Judge.

*Introduction*

Plaintiffs Gateway Hotel Holdings, Inc., Richfield Hospitality Services, Inc., Richfield Holdings, Inc. (collectively referred to as the Gateway Plaintiffs), and Liberty Mutual Fire Insurance Company, and Liberty Mutual Group (collectively referred to as the Liberty Mutual Plaintiffs), appeal the trial court's summary judgment order against them and in favor of Defendant Lexington Insurance Company (Lexington). In rendering its order, the trial court determined that an exclusion clause under the Legion Indemnity Company (Legion) general liability policy applies, and therefore the Lexington excess liability insurance policy does not provide coverage to the Gateway Plaintiffs. As a result of the exclusion, the trial court denied the Gateway Plaintiffs and Liberty Mutual Plaintiffs reimbursement for defense costs and a judgment entered against them in a prior personal injury lawsuit, affirmed on appeal in *Maldonado v. Gateway Hotel Holdings, L.L.C.,* 154 S.W.3d 303 (Mo.App. E.D.2005). We affirm.

*Factual and Procedural Background*

*The Underlying Lawsuit*

This appeal arises out of a separate lawsuit in which a boxer, Fernando Ibarra Maldonado (Maldonado), was injured in a boxing match at a hotel and brought a negligence action against the hotel owners, Gateway Hotel Holdings, L.L.C. (Gateway) and the match's promoter, Doug Hartmann Productions, L.L.C. (Hartmann). Maldonado participated in a boxing match at the Regal Riverfront Hotel in January 1999. Maldonado was knocked out during the boxing match. After he was revived, Maldonado left the ring and went to his dressing room where he later lost consciousness. No ambulance was on site. An ambulance was called and took Maldonado to the hospital. Maldonado suffered severe brain damage as a result of his injury.

Maldonado filed a petition for damages against several plaintiffs and submitted his negligence claim against Gateway under the "inherently dangerous activity" doctrine. The trial court submitted the following verdict-directing instruction to the jury:

**Your verdict must be for plaintiff Fernando Ibarra Maldonado and against defendant Gateway Hotel Holdings, Inc. if you believe:**

**First, boxing is an inherently dangerous activity, and**

**Second, during such activity, Doug Hartmann Productions, L.L.C. either:**

Failed to provide an ambulance on standby during the plaintiff's boxing match, or

Failed to provide medical personnel in plaintiff's locker room to monitor his condition, and

**Third,** Doug Hartmann Productions, L.L.C., in one or more respects submitted in Paragraph Second, was thereby negligent, and

**Fourth,** such negligence and the danger inherent in such activity combined to directly cause or contribute to cause damage to plaintiff.

A jury returned a verdict in the amount of $13.7 million in favor of Maldonado and against Gateway. This Court affirmed the judgment on appeal in *Maldonado v. Gateway Hotel Holdings, L.L.C.*, 154 S.W.3d 303 (Mo.App. E.D.2005). In discussing whether the trial court erred in denying Gateway's motion for directed verdict or JNOV, this Court noted that the contract to organize and promote a boxing match, entered between Gateway and Hartmann, required Hartmann to secure $5,000,000 in indemnity insurance, and provide a doctor at ringside and an ambulance on stand-by at the hotel on the night of the event. *Id.* at 306. This Court found that the failure to have medical monitoring and an ambulance present at the hotel for the boxing match was not "collateral negligence," but direct negligence relating to the boxing activity. In affirming the jury verdict this Court reasoned that it was Hartmann's failure to take precautions against the danger involved in the work itself, which the employer, Gateway, should have contemplated at the time of the contract. *Id.* at 310. The Court held:

Boxing is an activity that is by its very nature, violent and potential injury is an obvious risk. Because injury is clearly a potential risk of the sport, and the sport is of a violent nature itself, this would provide sufficient warning to a landowner of the potential risk of harm or special reason to take certain medical precautions to prevent further injury from a delay in treatment. The negligent failure to have medical monitoring or an ambulance on stand-by is not the type of negligence which would be foreign to the contemplated risk of being injured or knocked unconscious during a boxing match. Moreover, having medical monitoring and an ambulance on stand-by was provided for or contemplated by the contract between Hartmann Productions and the hotel.

*Id.*

*The Insurance Policies and Denial of Coverage*

Hartmann approached insurance agent Tom Bormann, who worked for Chapman–Sander, Inc., to procure the two insurance policies for the boxing match. Two insurance policies were obtained: a $1,000,000 general liability policy issued by Legion, and a $4,000,000 excess liability policy issued by Lexington. Legion refused to defend Gateway in the lawsuit and denied coverage for the Maldonado claim based upon an exclusion provision in its policy for assault and battery and an exclusion provision for bodily injury suffered by athletic participants. Lexington similarly refused to defend Gateway in the lawsuit and denied coverage for the Maldonado claim based upon exclusionary language contained in the excess liability policy issued by Lexington, which excluded coverage for injuries suffered by athletic participants and injuries resulting from an assault and battery exclusion. Lexington also relied upon the exclusion contained in the Legion policy as a basis for denying coverage. As a result of Legion's and Lexington's denial of a defense, Gateway's commercial general liability insurer, Liberty Mutual, took on

the defense and indemnity costs for Gateway in the underlying lawsuit.

The Gateway Plaintiffs and Liberty Mutual Plaintiffs subsequently brought a civil suit against defendants Legion and Lexington, seeking a declaratory judgment on the insurance policies issued by Legion and Lexington and reimbursement for the underlying case's defense costs and judgment entered against them. Additionally, after filing their action, the Gateway Plaintiffs and Liberty Mutual Plaintiffs learned that an "Order of Liquidation with a Finding of Insolvency" was entered against Legion on April 9, 2003, rendering the claim against it moot and leaving Lexington as a defendant.

*The Exclusionary Provisions*

Legion's policy provided Hartmann with $1,000,000 in bodily injury coverage for injuries caused by an occurrence during the policy period, which included the date Maldonado was injured. Specifically, the policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

The policy defines "occurrence" as an "accident." The Legion policy excludes coverage for injuries suffered by anyone while participating in an athletic activity, stating:

> With respect to any operations in the Schedule, this insurance does not apply to "bodily injury" to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor.

The policy also excludes coverage for liability or defense costs "arising out of or the failure to provide professional services."

Additionally, the Lexington policy provided Hartmann with $4,000,000 in excess coverage for certain types of accidental bodily injury occurring during the policy period, which also included the date on which Maldonado's injury occurred. The Lexington policy's Schedule of Underlying Insurance lists Legion Indemnity. The Lexington policy states that if the "Underlying Insurance" is not available because of "the bankruptcy or insolvency of the underlying insurer(s) providing such 'Underlying insurance' . . . then this policy shall apply (and amounts payable hereunder shall be determined) as if such 'Underlying Insurance' were available and collectible." The exclusions applicable to the underlying insurance also apply to the Lexington insurance. Additionally, the Lexington policy states that "[i]f any of the following conditions are contrary to conditions contained in the underlying insurance the provisions contained in this policy apply." The Lexington policy contains its own athletic participants' exclusion, which reads:

> This insurance does not apply to 'bodily injury' to any person engaged in:
>
> 1. Any athletic, exercise or sports activity; or
>
> 2. Managing, coaching, or supervising such activity which you sponsor or which is conducted on premises you own, rent or control.
>
> 'Activity' as used herein includes travel or activity in the course of travel to or from any destination for the purpose of practicing for or participating in any such athletic, exercise or sports activity.

The Lexington policy also provides an exclusion for professional liability, which states, "It is agree[d] that this policy shall not apply to liability arising out of the rendering of or failure to render professional services, or any error or omission, malpractice or mistake of a professional nature committed by or on behalf of the 'Insured' in the conduct of any of the 'Insured's' business activities."

*Summary Judgment Motions*

The parties filed cross-motions for summary judgment. On July 9, 2007, the trial court entered its order on the motions for summary judgment and held that the cause of Maldonado's injuries in the underlying lawsuit was his participation in a sports or athletic contest or exhibition, which was excluded under the Legion policy. The trial court held that the Legion policy's athletic participants' exclusion "clearly and unambiguously applies in this case," and therefore it granted Lexington's summary judgment motion and denied the Gateway Plaintiffs' and Liberty Mutual Plaintiffs' summary judgment motion. The trial court denied the Gateway Plaintiffs' and Liberty Mutual Plaintiffs' Motion for Reconsideration, and entered its final judgment in favor of Lexington and against the Gateway Plaintiffs and Liberty Mutual Plaintiffs on September 14, 2007. The Gateway Plaintiffs and Liberty Mutual Plaintiffs filed their notice of appeal on September 25, 2007.

*Point on Appeal*

The Gateway Plaintiffs and Liberty Mutual Plaintiffs (collectively referred to as Plaintiffs) raise one point on appeal, although this point is divided into several parts. Plaintiffs claim that the trial court erred in finding that the athletic participants' exclusion in the Legion policy bars coverage for Gateway as a result of the Maldonado loss because the concurrent proximate cause rule prevents the athletic participants' exclusion from being interpreted to bar coverage. Plaintiffs assert that the loss for which Gateway sought coverage was concurrently caused by Gateway's failure to make available adequate medical care at the site of the Maldonado boxing match following his bout, and that cause of injury was not a listed exclusion in either the Legion or Lexington policy. In sub-point I, Plaintiffs claim the law governing the interpretation of insurance policies is solicitous of the interests of insureds and those seeking coverage under insurance policies. In sub-point II, Plaintiffs argue that the trial court erred in holding that the Legion athletic participants' exclusion bars coverage because the concurrent proximate cause rule requires a finding of coverage under the policy. In sub-point III, Plaintiffs assert that Maldonado's claim was otherwise covered under the Legion and Lexington insurance policies, and therefore, the trial court should have found Lexington liable to Gateway for coverage in this case. Finally, in sub-point IV, Plaintiffs claim that the trial court's conclusion regarding the coverage issue between Gateway and Lexington directly contradicts the trial court's ruling on the Chapman–Sander Motion for Summary Judgment.

*Standard of Review*

The standard of review for an appeal from summary judgment is essentially de novo. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment will be upheld on appeal if there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* Summary judgment is particularly appropriate when construction of a contract is at issue and the contract is unambiguous on its face. *Lupo v.*

*Shelter Mut. Ins. Co.*, 70 S.W.3d 16, 18–19 (Mo.App. E.D.2002).

### Discussion

The appeal before us presents no disputed issue of material fact. The cause of Maldonado's injuries and the vicarious liability of the Gateway Plaintiffs' have been determined by this Court in the underlying *Maldonado* case. 154 S.W.3d 303. The language of the insurance policies at issue, including the exclusionary clause, is not disputed, although the parties disagree as to the meaning of the said language. The matter to be determined by this Court is whether the uncontroverted facts surrounding Maldonado's participation in the boxing match in January 1999 bring Maldonado's activities within the exclusionary provisions of the general liability or excess liability insurance policies in place at the time of the boxing match. Plaintiffs contend the exclusionary clauses do not apply because Maldonado's injuries did not occur "while" Maldonado was participating in the boxing match, but that Maldonado's injuries occurred after the boxing match was completed, and when Maldonado was in the dressing room. Plaintiffs argue Maldonado's injuries occurred at a time when Maldonado was no longer excluded from Legion or Lexington's coverage based on the athletic participants' exclusion because the exclusion applied only to injuries suffered "while" participating in the athletic event. Lexington asserts that Maldonado's claim falls within both Legion and Lexington's athletic participants' policy exclusions because of the trial court's finding that Maldonado was injured while fighting in the boxing match, and that the cause of Maldonado's injuries was his participation in the boxing match. We agree with Lexington that the exclusionary provisions of the insurance policies apply, thereby precluding Plaintiffs' recovery under the said policies.

### The Legion Policy

Because the exclusions applicable to the underlying Legion policy also apply to the Lexington insurance, we first analyze the Legion policy exclusion. In construing the Legion insurance policy exclusion, we must keep in mind that insurance policies are contracts; thus, the rules of contract construction apply. *Lupo*, 70 S.W.3d at 19. The words of a policy are given their ordinary meaning unless it is obvious that a technical meaning was intended. *Krombach v. Mayflower Ins. Co. Ltd.*, 785 S.W.2d 728, 731 (Mo.App. E.D. 1990). Courts cannot create an ambiguity to enforce a particular construction. *Rodriguez v. Gen. Accident Ins. Co.*, 808 S.W.2d 379, 382 (Mo. banc 1991). Moreover, where no ambiguity exists in the contract, the court enforces the policy as written. *Peters v. Employers Mut. Cas. Co.*, 853 S.W.2d 300, 302 (Mo. banc 1993).

The issue of whether a contract is ambiguous is a question of law. *Id.* The Missouri test for ambiguity is clear. The policy must be read as a whole to determine the parties' intent. *Oak River Ins. Co. v. Truitt*, 390 F.3d 554, 557 (8th Cir. 2004), *citing Kyte v. Am. Family Mut. Ins. Co.*, 92 S.W.3d 295, 298–99 (Mo.App. W.D.2002). A contract is ambiguous only if reasonable people may fairly and honestly differ in their construction of the terms because the terms are susceptible to more than one meaning. *Lupo*, 70 S.W.3d at 19. A contract is not ambiguous merely because the parties disagree over its meaning. *Id.* Evidence of how the contract was understood or acted upon by the parties is only used when the contract or a contract term is unclear. *Nickles v. Auntie Margaret Daycare Corp.*, 829 S.W.2d 614, 616 (Mo.App. E.D.1992).

Ambiguous language is construed against the insurer. *Peters*, 853

S.W.2d at 302. Likewise, so is limiting language. *Chase Resorts, Inc. v. Safety Mut. Cas. Corp.,* 869 S.W.2d 145, 150 (Mo. App. E.D.1993). If an ambiguity exists, the policy language will be interpreted as understood by the lay person who purchased it. *Oak River Ins. Co.,* 390 F.3d at 558. Courts should not adopt an interpretation neutralizing a policy provision if another interpretation gives it effect. *Id.*

The Legion policy exclusion states: "[T]his insurance does not apply to 'bodily injury' to any person while practicing for or participating in any sports or athletic contest or exhibition that you sponsor." We find the language of the exclusion unambiguous and further hold that the Legion policy exclusion applies to Maldonado's claims. Plaintiffs argue that the policy exclusion does not apply because Maldonado collapsed in the locker room after he had completed his bout, and therefore, his injuries were not incurred "while" Maldonado participated in his bout of the boxing match sponsored by Gateway. To accept Plaintiffs' argument would require this Court to ignore the plain meaning of the phrase "while practicing for or participating in any sports or athletic contest or exhibition that you sponsor" and ignore the jury's finding in favor of Maldonado due to Hartmann's failure to provide an ambulance and medical personnel "during" the boxing match.

Although "sports or athletic contest or exhibition" is not defined in the policy, we agree with Lexington that Maldonado's "participation" in this particular sporting event on January 29, 1999, encompassed more than the six rounds of Maldonado's "bout" lasting a short time in the boxing ring. An ordinary person would find this phrase to include not only Maldonado's actual time in the boxing ring, but also his warming up and decompressing time in the locker room. Maldonado incurred the blows that contributed to his injuries during his bout of the boxing exhibition conducted on January 29, 1999. In addition, the jury found the Gateway Plaintiffs liable due to Hartmann's failure to provide medical personnel and an ambulance "during" the boxing match. The jury's finding that Hartmann's negligence occurred "during" the boxing match removes any doubt that the injuries suffered by Maldonado occurred "while" participating in the boxing exhibition sponsored by Gateway.

The Gateway Plaintiffs' liability in the underlying case was premised upon a verdict directing instruction that required the jury to find for Maldonado and against the defendant Gateway if the jury found:

First, boxing is an inherently dangerous activity, and

Second, ***during such activity,*** Doug Hartmann Productions, L.L.C. either:

Failed to provide an ambulance on standby *during* the plaintiff's boxing match, or

Failed to provide medical personnel in plaintiff's locker room to monitor his condition, and

Third, Doug Hartmann Productions, L.L.C., in one or more respects submitted in Paragraph Second, was thereby negligent, and

Fourth, such negligence and the danger inherent in such activity combined to directly cause or contribute to cause damage to plaintiff.

(emphasis added). The use of the phrase *"during such activity"* in the verdict director is likewise unambiguous and supports the trial court's entry of summary judgment in favor of Lexington based upon its finding that the athletic participants' exclusion in the Legion policy bars coverage for the Gateway Plaintiffs as a result of Maldonado's injuries. Thus, as evident in the verdict director, the fault of

Hartmann—either by failing to provide an ambulance or failing to provide medical personnel—occurred *during* the boxing activity, which was inherently dangerous.

Plaintiffs argue that the use of the word "while" in the Legion policy exclusion is "temporal in nature and limits only losses occurring during the athletic contest" as compared to broader policy exclusions that exclude coverage for bodily injury "arising out of any athletic contest." We acknowledge Plaintiffs' noted distinction between the language employed by the authors of these two types of athletic participants' policy exclusions. However, Plaintiffs' argument fails because whether Maldonado's injuries were caused by the blows to his head or by the failure of Gateway to provide an ambulance and medical care, each of these actions occurred during the boxing match, i.e., while Maldonado participated in the boxing match.[1] Given the jury's finding in the underlying lawsuit, we find that the liability for which the Gateway Plaintiffs and Liberty Mutual Plaintiffs have been held responsible fits squarely within the unambiguous athletic participants' exclusion found in the Legion policy.

Finally, we note that in his Second Amended Petition, Maldonado alleges that Gateway's liability stemmed from activity that occurred *during* the boxing event, activity that would then be excluded from Legion's policy coverage. Specifically, Maldonado claims in his Second Amended Petition:

13. Prior to and *during the subject boxing match on* January 29, 1999, no ambulance, other emergency transportation, or adequate medical facilities were present at the Regal Riverfront Hotel.

14. The defendants were aware of and/or acknowledged the dangers inherent in participation in the subject match prior to January 29, 1999, but defendants took no action to provide for an ambulance on the premises *during the subject match.* Further[,] the defendants, and each of them, disregarded and failed to adequately monitor the plaintiff's medical condition *after his bout* had ended.

\* \* \*

18. Defendants, and each of them, owed a duty to plaintiff to provide adequate medical treatment to plaintiff, to monitor plaintiff's medical condition and to provide an ambulance on the premises of the Regal Riverfront *during the course of the subject match and other matches on* January 29, 1999.

19. Defendants, and each of them, were negligent in the performance of that duty in that defendants:

a. Negligently and carelessly failed to provide an[ ] ambulance, require an[ ] ambulance and/or insure that an ambulance was present at the Regal Riverfront *during the subject match and other matches on* January 29, 1999;

b. Negligently and carelessly failed to provide, require and insure that adequate medical care was available to the plaintiff at the Regal Riverfront *during the subject match and other matches on* January 29, 1999;

---

1. In their Reply Memorandum of Law filed in Response to Defendant Lexington's Response to Plaintiffs' Motion for Summary Judgment, Plaintiffs assert that the ordinary meaning an average lay person would give to the language of the Legion and Lexington athletic participants' exclusions is durational. Plaintiffs interchangeably use the terms "while" and "during" in the course of their discussion of the limited durational extent of the exclusion. The use of the term "during" in the verdict director is consistent with Plaintiffs' argument, and limited the jury's finding to the same durational limit suggested by Plaintiffs.

c. Negligently and carelessly failed to warn plaintiff that no ambulance was present *during the subject match;*

* * *

f. Negligently and carelessly failed to monitor and adequately treat, or summon medical assistance for, plaintiff's medical condition *after his bout had ended.*

(emphasis added)

The duty of an insurer to defend an action depends upon whether the allegations of the petitioner state a claim within the policy coverage. *Gen. Ins. Co. of Am. v. Academy of the Visitation at St. Louis,* 598 F.Supp. 1131, 1133 (D.Mo.1984). As pleaded by Maldonado in the underlying lawsuit, the defendants' actions and inactions occurred during the boxing match. Those defendants, the Plaintiffs in this action, cannot now frame Maldonado's allegations so as to fall outside of the athletic participants' policy exclusions. Legion properly denied coverage to Plaintiffs based upon the allegations framed by Maldonado's petition.

*Concurrent Proximate Cause Rule*

Next, we consider Plaintiffs' argument that the "concurrent proximate cause rule" requires coverage for Maldonado's injuries under the Legion policy notwithstanding the athletic participants' exclusion. Plaintiffs argue that because Hartmann's failure to make available adequate medical care was "conclusively established" as a proximate cause of Maldonado's injuries, such failure was a separate and concurrent proximate cause from Maldonado's participation in the boxing match, and therefore, the Legion insurance policy must provide coverage rather than exclude

it. We disagree and find the athletic participants' exclusion applies.

Although not yet considered by the Missouri Supreme Court, this Court has recognized that an insurer is liable for coverage under its insurance policy if an insured risk and an excluded risk constitute concurrent proximate causes of an accident, so long as one of the causes is covered by the policy. *Braxton v. United States Fire Ins. Co.,* 651 S.W.2d 616, 619 (Mo.App. E.D.1983). This principle is generally referred to as "the concurrent proximate cause rule."[2] The concurrent proximate cause rule has been considered by Missouri courts only a few times since *Braxton,* primarily in the context of claims of negligent supervision. The analysis of this rule has evolved from this Court's initial pronouncement of the rule citing examples from other jurisdictions in *Braxton,* to the more detailed discussion of the inter-relationship of the multiple causes found in recent cases emanating from both this Court and the Southern District. A brief review of these cases explains the ongoing evolution of the concurrent proximate cause rule in Missouri, and its application to the case before us.

In 1983 the *Braxton* court held that an insurance policy excluding "bodily injury arising out of the ownership or use of any firearm" did not bar coverage under the policy where a gas station customer was shot and injured by an intoxicated gas station attendant after an altercation. *Id.* at 620. The owner of the gas station sought coverage under its policy of insurance. The insurer of the gas station denied coverage based on the policy's exclusion, which stated: "This insurance does

**2.** Although the Southern District in *In re Estate of Murley,* 250 S.W.3d 393 (Mo.App. S.D. 2008), has recently acknowledged the acceptance of the concurrent proximate cause rule in Missouri, the Western District has not expressly recognized this doctrine. *See Green v. Penn–America Ins. Co.* 242 S.W.3d 374, 384 n. 12 (Mo.App. W.D.2007).

not apply ... to bodily injury and property damage arising out of the ownership or use of any firearm." *Id.* at 617. The plaintiff first argued that the exclusionary clause did not deny coverage because the clause applied only when the insured or someone on the insured's behalf was engaged in the handling of or using firearms. *Id.* at 618. The plaintiff further argued for coverage on the theory that the gas station owner's negligent supervision of his employees was a separate and non-excluded cause of the plaintiff's injuries. *Id.* at 619. The court found coverage based on the ambiguous wording of the exclusionary clause, and held that because the language of the policy was reasonably susceptible to two interpretations, the court was required to apply the construction most favorable to the insured. *Id.*

The *Braxton* court, however, continued in its opinion and also addressed the plaintiff's assertion that coverage under the policy was required because the insured's negligent supervision of his employees was a separate and non-excluded cause of the plaintiff's injuries. In *Braxton,* we acknowledged the theory of liability under the concurrent proximate cause rule and stated, "[a]lthough no Missouri cases are precisely on point, it is widely accepted that where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable so long as one of the causes is covered by the policy." *Id., citing State Farm Auto. Ins. Co. v. Partridge,* 10 Cal.3d 94, 104, 109 Cal.Rptr. 811, 514 P.2d 123 (Cal.1973). Without engaging in any significant analysis of the rule, the court reviewed several cases from other jurisdictions in which the insured's negligence was found to be a factor causing the plaintiff's injury, in addition to the other "concurrent" cause. *Id.* at 619–20, 109 Cal.Rptr. 811, 514 P.2d 123. The *Braxton* court considered the reasoning of these cases

persuasive, and held that the gas station owner's negligence in failing to supervise his employees was a separate, concurrent, and non-excluded cause of liability from the use of the firearm, and that the policy would provide the insured coverage. *Id.* at 620.

This Court next addressed the issue of liability and insurance coverage under the concurrent proximate cause rule in *Centermark Props., Inc. v. Home Indem. Co.,* 897 S.W.2d 98 (Mo.App. E.D.1995), where the plaintiff was injured when struck by an automobile driven by a third party who had stolen the automobile from Centermark. Centermark's insurance policy excluded coverage for bodily injury "arising out of the ownership, maintenance, operation, use, loading or unloading of any automobile." *Id.* at 100. Although the plaintiff was injured as a result of the operation of an automobile owned by Centermark, we found that the exclusion clause did not apply to plaintiff's claim because Centermark, the insured, was negligent in the hiring, supervising and training of its employees. *Id.* at 101. Consistent with our ruling in *Braxton,* we held that one proximate cause of plaintiff's injuries may have been the third-party use of the automobile owned by Centermark, which clearly was excluded from coverage, but that a concurrent cause of plaintiff's injuries may have been Centermark's alleged negligence in hiring, supervising and training its employees, which was a covered risk under the policy. *Id.* In its analysis, the *Centermark* court concluded that the claim for negligent supervision against the insured did not depend upon the cause of the eventual harm to the plaintiff, and that the ownership or use of the automobile was incidental, and not an essential element of the negligence claim against Centermark. Because the plaintiff's allegations of negligence against Centermark contained sepa-

rate and non-excluded causes of his injuries, apart from the use or ownership of a vehicle, we required the insurer to defend Centermark in this personal injury suit. *Id.* at 103.

*Centermark* introduced the idea that Missouri courts should analyze the concurrent proximate cause rule in terms of determining whether a plaintiff's claim for negligent supervision depended upon the instrumentality causing the harm to plaintiff. If the claim depended on the instrumentality, *Centermark* suggests that the differing causes are not truly separate, but are incidental to each other and cannot be deemed concurrent proximate causes. However, if the differing causes do not depend upon each other to establish the necessary elements of each claim, then the said causes are truly separate, and support the application of the concurrent proximate cause rule so as to allow insurance coverage. *Id.*

Since *Centermark*, this Court has attempted to further clarify the rule. In doing so, we have increasingly focused on the inter-relationship of the purported "concurrent" causes. In *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204, 207–09 (Mo.App. E.D.1999), we drew upon our opinion in *Centermark* when considering whether to permit coverage under a policy of insurance for claims of negligent supervision of a minor by grandparents, which resulted in the vehicular death of their grandchild. Like the situation in *Centermark*, the insurance policy in *Neal* contained an exclusionary clause for claims arising out of the operation of an automobile. *Id.* at 206–07. We stated in *Neal* that, in claims for negligent supervision, it is the obligation and ability to supervise and control, not the instrumentality that caused the harm that is decisive, and concluded that the use of the vehicle was incidental to the claim for negligent super-

vision of the decedent who was run over by the vehicle. *Id.* at 208–09. Because the claim for negligent supervision of a minor is unrelated to and can occur without the use of a vehicle, we found that, as a matter of law, the exclusion for use of a vehicle did not apply to the facts of that case. *Id.*

A year after our decision in *Neal*, we refused to apply the concurrent proximate cause rule and upheld the policy exclusions in *Hunt v. Capitol Indem. Corp.*, 26 S.W.3d 341 (Mo.App. E.D.2000), which involved a fatal stabbing at a bar in St. Louis. The bar owner's insurance policy excluded coverage for bodily injury arising out of assault, battery or assault and battery. *Id.* at 342. While the *Hunt* court reviewed our earlier decisions in *Braxton* and *Centermark*, it concluded that the holdings of those two cases were not persuasive under the facts presented in *Hunt*, and made only a passing reference to our decision in *Neal*. *Hunt*, 26 S.W.3d at 345. Without considering whether the negligent supervision claim against the bar owner was unrelated to and could occur without the use of a knife as was our analysis in *Neal*, the *Hunt* court concluded that without the underlying assault, there would have been no injury and therefore no basis for a claim of negligence against the bar owner. *Id.* Without distinguishing between the plaintiff's claim of negligent supervision against the bar owner and the instrumentality of the underlying assault, the *Hunt* court seemed to have adopted a "but for" causation analysis with its decision that the bar owner's negligence was not a separate and non-excluded cause under the insurance policy. *Id.*

This Court again reviewed the concurrent proximate cause rule in connection with claims of negligence in *Bowan v. Gen. Sec. Indem. Co. of Arizona*, 174 S.W.3d 1 (Mo.App. E.D.2005). In *Bowan*, the plaintiff, a physically and mentally disabled

woman, was injured while riding as a passenger in a van owned and operated by a non-emergency transportation company. *Id.* at 3. At the time of the accident, the plaintiff was not wearing a seatbelt. *Id.* The plaintiff alleged that the transportation company was negligent in the operation of the van, and also was negligent in failing to determine that she was not wearing a seatbelt. *Id.* The insurer of the transportation company argued that there was no coverage under its policy of insurance because of an exclusion that denied coverage for bodily injury arising out of the ownership, maintenance, or use of any automobile. *Id.* at 5. In *Bowan*, we stated that the key question in determining whether the policy exclusion precluded coverage was "whether the failure to secure [plaintiff] is a negligent act distinct from the 'operation' of the vehicle, and further whether the failure to secure is a concurrent proximate cause of [plaintiff's] injuries such that [the insurer] would be liable under the reasoning of *Braxton*." *Id.* at 5. After reviewing several cases involving claims of negligent supervision or entrustment in connection with automobile accidents, we concluded that the critical distinction between cases finding insurance coverage under the concurrent proximate cause rule and cases denying insurance coverage under the policy exclusion was whether the alleged negligence was "independent of or divisible from the use of a motor vehicle as contemplated by the policy." *Id.* More simply stated, could the claim for negligent supervision occur without the use of the vehicle? In *Bowan*, we found that the failure to secure the plaintiff in the van was an "independent and distinct" act of negligence that did not necessarily involve the operation of the vehicle, and applied the concurrent proxi-

mate cause rule to allow coverage under the policy. *Id.* at 7. Noticeably absent from our analysis of the concurrent proximate cause rule in *Bowan* was any reference to *Hunt*.[3]

While not a Missouri court, the Eighth Circuit, citing *Bowan*, has recently explained that, under Missouri law, the concurrent proximate cause rule applies only where the "alleged covered cause is an act independent and distinct from the excluded cause of the injury." *Am. Family Mut. Ins. Co. v. Co Fat Le*, 439 F.3d 436, 439 (8th Cir.2006).

The concurrent proximate cause rule was most recently considered by Missouri's appellate courts in *In re Estate of Murley*, 250 S.W.3d 393 (Mo.App. S.D. 2008). In *Murley*, two men loaded a shower unit into a pickup truck for transport. While one of the men was driving the truck, the shower unit blew out of the truck and injured Wilson. *Id.* at 394–95. The effective insurance policy excluded bodily injury arising out of ownership, maintenance, use or entrustment of a motor vehicle owned, operated by, or rented or loaned to the insured. *Id.* at 396. The plaintiffs argued that the insurer was liable based on the concurrent proximate cause rule in that "the negligent failure to secure a load in a vehicle properly does not constitute vehicle 'use' within the meaning of an automobile exclusion when that negligence is an independent proximate cause of an injury." *Id.* at 398. The plaintiffs asserted that the failure to secure the object in the truck, whether or not the truck was being operated, was the proximate cause of Wilson's injuries, and therefore, was an independent and concurrent act of negligence separate and apart from other

---

**3.** While our opinion in *Bowan* cites to *Hunt* for a point relating to contract interpretation, *Hunt* is neither cited nor referred to in the portion of our opinion addressing the concurrent proximate cause rule. *Bowan*, 174 S.W.3d at 5.

negligent acts arising out of the use of the truck. *Id.*

The Southern District rejected the plaintiffs' assertion that the insurance policy provided coverage under the concurrent proximate cause rule. The *Murley* court found that the plaintiff's claim of negligence implicitly acknowledged the dependent relationship between the failure to properly secure the shower unit and the use of the truck because the petition described the driver's negligence as failing "to secure [the shower unit] within his vehicle in such a fashion as to prevent [the shower unit] from leaving his vehicle." *Id.* at 400. Only in the context of transporting the shower unit by using the truck was the driver required to secure the unit. *Id.* As noted by the *Murley* court, there was no evidence in the record that the manner in which the shower unit was or was not secured in the truck posed a risk to anyone while the truck was sitting stationary and not otherwise being used. *Id.* at 401. Only through the operation of the truck could the defendant become negligent for the manner in which the shower unit was secured. Thus, the act of negligently failing to secure the load in the pick up truck was not independent of the use of the truck. *Id.* The court held that the driver's negligence in failing to secure the shower unit within the truck was dependent upon the use of the truck in transporting the shower unit, and therefore the vehicle exclusion precluded coverage. *Id.* at 402.

 We find that the judicial analysis first offered in *Centermark,* and later refined in *Neal* and *Bowan* provides the best guidance in applying the concurrent proximate cause rule first announced in *Braxton.* We agree with the *Bowan* court's analysis that, in order to permit coverage under the concurrent proximate cause rule notwithstanding the presence of an exclusion clause, the differing allega-

tions of causation must be "independent and distinct." The alleged cause covered under the insurance policy must be independent and distinct from the alleged cause excluded under the policy. In determining whether one cause is "independent and distinct" from another, we find instructive our analysis and discussion in *Centermark,* which considered whether the covered cause and excluded cause depended upon each other to establish the necessary elements of each claim. *Centermark,* 897 S.W.2d at 103. If the essential elements of a negligence claim asserting a cause of injury can be stated without regard to the essential elements of a differing claim of negligence that also is asserted to have caused the same injury, then the separate causes are independent and distinct from the other, and support the application of the concurrent proximate cause rule.

In the matter before us, the facts show that the two causes of Maldonado's injuries were not independent and distinct. This leads us to conclude that Legion's athletic participants' exclusion applies, and precludes coverage for Plaintiffs' claims. Given the applicability of the inherent dangerous activity doctrine to the facts of this case, we are unable to separate the two claimed causes of Maldonado's injuries. Maldonado alleged that Gateway was vicariously liable under the inherently dangerous activity doctrine for Hartmann's failure to provide an ambulance and medical personnel. Under this theory of liability submitted to the jury in Maldonado's verdict director, Gateway's liability was entirely dependent upon Maldonado's participation in the boxing match. The application of the inherently dangerous activity doctrine in this case underscores the interdependence of causes of Maldonado's injuries, and completes our analysis of the application of the concurrent proximate

cause rule to the unique facts of this case as presented in the record before us.

■■■■■ In the underlying *Maldonado* case we held that the landowners, Gateway, hired an independent contractor, Hartmann, to promote a boxing match on Gateway's premises. The jury found the boxing match to be an inherently dangerous activity.[4] In *Maldonado* we stated, "... under the inherently dangerous activity exception to landowner liability, a landowner hiring an independent contractor to perform an inherently dangerous activity has a 'nondelegable duty to take special precautions to prevent injury from the activity.'" 154 S.W.3d at 309. Without the boxing activity, there could be no finding of liability on the part of Gateway because only under the inherently dangerous activity doctrine could Gateway be found negligent for failing to provide an ambulance or medical personnel for Maldonado. Consistent with our analysis in *Centermark*, but unlike the facts of *Centermark* and *Bowan*, the essential elements of Maldonado's negligence claim against Gateway cannot be stated without regard to Maldonado's participation in the boxing match, which is excluded from coverage under the Legion policy. The verdict director underscores this fact as the jury is required to find that boxing is an inherently dangerous activity before the jury may consider whether Gateway was liable for Maldonado's injuries.

Because Maldonado's participation in the boxing match is an essential element of his claim of negligence for failing to provide an ambulance and medical personnel, we cannot conclude that the failure to provide an ambulance or medical personnel was an independent and distinct cause of Maldonado's injuries. Analogous to the facts in *Murley*, Gateway's failure to provide an ambulance and medical personnel posed no risk of injury to Maldonado or anyone else as long as there was no boxing match conducted on Gateway's property. The act of negligently failing to provide an ambulance and medical personnel was dependent upon, and not independent of, Maldonado's participation in the boxing match. *See Murley*, 250 S.W.3d at 401.

Plaintiffs recognize the interdependence of the two causes of Maldonado's injury when they state in their brief, "[a]dmittedly, Maldonado would have had no claim had he not been injured during the boxing match, and his ultimate injuries were in part caused by an injury he suffered during the boxing match." Plaintiffs argue, however, that Maldonado's injuries were also caused, worsened and contributed to by the failure to have an ambulance or a doctor at the site of the boxing match after the match was concluded and after Maldonado had suffered his initial injury. While Plaintiffs may be correct in their theory that Maldonado's injuries were caused, worsened and contributed to by Hartmann's negligence, we disagree that such negligence was a "concurrent proximate cause" of the injuries, independent and distinct from the boxing match. Plaintiffs cannot separate the causes of Maldonado's injuries because Gateway's liability arises solely from the inherent dangerous activity

---

4. As explained by this Court in *Hatch v. V.P. Fair Found.*, 990 S.W.2d 126, 133 (Mo.App. E.D.1999), a landowner generally owes a duty of ordinary and reasonable care to invitees to prevent injury. A landowner may shift its duty to use ordinary and reasonable care when it hires an independent contractor. *Id.* This shift in duty may return to the otherwise non-negligent landowner under the "inherently dangerous activity" doctrine, which allows the landowner to be held vicariously liable for the negligence of an independent contractor. *Id.* Absent the "inherently dangerous activity" doctrine, the landowner is not liable in tort for an injury caused by the independent contractor's negligence. *Carson v. Blodgett Const. Co.*, 189 Mo.App. 120, 174 S.W. 447 (1915).

of boxing, which is an essential element of Maldonado's claim of negligence against Gateway.[5] These facts require us to find that the concurrent proximate cause rule does not apply, and that Legion's athletic participants' exclusion precludes coverage to Plaintiffs.

## Conclusion

Maldonado's allegations in his cause of action against Gateway come within the Legion policy athletic participants' policy exclusion. Legion properly denied coverage to Plaintiffs based upon the allegations framed by Maldonado's petition. We do not apply the concurrent proximate cause rule to provide coverage under Legion's policy because Gateway's liability for failing to provide an ambulance and medical personnel was not independent and distinct from Maldonado's participation in the boxing match. Given the interdependence of the alleged separate causes of Maldonado's injuries, Plaintiffs have not established concurrent proximate causes of Maldonado's injuries under Missouri law.

Because coverage by Legion and Lexington is denied based on the athletic participants' exclusion under the Legion policy, we need not consider the remaining arguments contained in the Gateway Plaintiffs' and Liberty Mutual Plaintiffs' sole point on appeal. Based upon the evidence and record before us, we hold that the trial court did not err in finding that the athletic participants' exclusion of the Legion policy barred coverage for the Gateway Plain-

tiffs and Liberty Mutual Plaintiffs. The trial court properly granted summary judgment in Lexington's favor because there exists no genuine dispute of material fact, and Lexington is entitled to judgment as a matter of law. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

The judgment of the trial court is affirmed.

LAWRENCE E. MOONEY, P.J., and BOOKER T. SHAW, J., concur.

---

5. Plaintiffs cite the Louisiana case of *Sam v. Delta Downs, Inc.,* 564 So.2d 829 (La.Ct.App. 1990) as support for their argument that the concurrent proximate cause rule should apply in this case. In *Sam,* the Louisiana appellate court held that allegations of the race track's improper supervision and selection of medical employees, negligent on-site emergency medical treatment, and maintenance of inadequate on-site medical facilities, were claims independent of decedent's participation in horse racing, and therefore not excluded from

coverage under an exclusion clause for participation in an athletic event. While we recognize the similarity of the exclusionary language and the claims presented in *Sam* to the case before us, we note that the Louisiana appellate court does not engage in a substantive analysis of the interdependence of the alleged "concurring" causes that the Missouri appellate courts have undertaken in *Neal* and *Bowan,* and does not consider the effect of the inherent dangerous activity doctrine upon its analysis.